*PEABODY WESTERN COAL COMPANY, Kayenta Mine*
Petitioner
*vs.*
*NAVAJO NATION LABOR COMMISSION*
Respondent
*and*
*Edward Silverhatband*
Real Party in Interest

In the Supreme Court of the Navajo Nation

No. SC-CV-14-03
August 1, 2003

C. Benson Hufford, Esq., Flagstaff, Arizona, for Petitioner.

John A. Kern, Esq., Window Rock, Navajo Nation (Arizona), for Respondent.

John A. Chapela, Esq., for Edward Silverhatband, Real Party in Interest.

Before YAZZIE, Chief Justice, and FERGUSON, Associate Justice.

Opinion delivered by YAZZIE, Chief Justice.

This case involves a Petition for a Writ of Prohibition by Peabody Western Coal Company ("Peabody") to prevent the Navajo Nation Labor Commission ("Commission") from adjudicating a Complaint filed by a former employee of Peabody, Edward Silverhatband ("Silverhatband"). A Writ of Prohibition is an original action in this Court and it "is appropriately issued where the trial court [or quasi-judicial agency] is proceeding without or in excess of its jurisdiction … and petitioner has no plain, speedy and adequate remedy at law." *Yellowhorse Inc. v. Window Rock Dist. Ct.*, 5 Nav. R. 85 (Nav. Sup. Ct. 1986).

We hold that the Commission is barred from hearing Silverhatband's claims under the doctrine of *res judicata* and therefore grant the Petition for a Writ of Prohibition.

## I. FACTS

Silverhatband was employed by Peabody as a Scraper Operator. The terms of his employment were governed by a collective bargaining agreement ("Labor Agreement") between Peabody and the United Mine Workers of America ("Union"). Peabody issued Silverhatband a Written Notice of Suspension with Intent to Discharge as provided in Article XXI §(b)(c)(d) of the Labor Agreement, on the grounds that Silverhatband showed up to work in an unfit condition. Silverhatband challenged the notice on the grounds that he should not have been terminated for a first offense. He also claimed that he was being treated discriminatorily because other employees who had shown up to work intoxicated had been either sent home to "sleep it off" or had been offered the chance to enter a rehabilitation program.

Silverhatband and representatives of Peabody and the Union met to discuss the matter. The parties could not resolve the problem, and Peabody terminated Silverhatband's employment. Silverhatband and the Union filed a grievance according to the terms of the Labor Agreement. The parties met again to resolve the problem but failed. Consequently, in accord with the procedures set out in the Labor Agreement, Silverhatband submitted his claims to binding arbitration.

An arbitration hearing was held and the arbitrator held that Peabody had just cause to terminate Silverhatband and that Peabody did not treat Silverhatband in a discriminatory manner. Silverhatband then filed a Complaint with the Navajo Nation Labor Commission ("Commission") alleging, once again, that his termination was unjust and that he had been the object of discriminatory treatment. He also claimed that the procedures of the arbitration hearing were unfair and violated the Labor Agreement.

Peabody responded by filing a Motion to Dismiss on the grounds that 1) the Commission was barred from hearing the Complaint under the doctrines of *res judicata* and collateral estoppel because Silverhatband's claims had already been adjudicated by an arbitrator whose decision was binding under the Labor Agreement; and, 2) the Commission was preempted by federal law from adjudicating Silverhatband's claims. Peabody argued that the Labor Agreement under which Silverhatband's claims arose was governed exclusively by the National Labor Relations Act ("NLRA ") because the NLRA applies to all collective bargaining agreements between private employers and labor organizations. As such, Peabody argued, the NLRA preempts all law that purports to regulate such contracts, including the Navajo Preference in Employment Act (NPEA).

The Commission denied Peabody's Motion to Dismiss. It held that it would hear Siverhatband's substantive claims, which it had determined were colorable under the NPEA, and dismissed Silverhatband' s claims regarding the procedural defectiveness of the arbitration hearing. The Commission explained that it does not review arbitration decisions, either on the merits or on procedure. The Commission held that since it was only going to adjudicate Silverhatband's claims under the NPEA, it was not necessary to reach the question of federal preemption, and thus did not address Peabody's argument on that issue.

The Commission also held that 1) Silverhatband was not barred from bringing his colorable claims under the doctrine of *res judicata* because, as claims of violations of the NPEA, and not violations of the Labor Agreement, they were new claims; and 2) Silverhatband was not barred under the doctrine of collateral estoppel because the doctrine only applies when there has been a prior judicial proceeding by a competent tribunal, and the arbitration hearing was not such a proceeding.

Peabody filed a Petition for a Writ of Prohibition with this Court under 7 N.N.C § 303 (1995) in order to prevent the Commission from adjudicating

Silverhatband's Complaint. We issued an Alternative (Temporary) Writ, prohibiting the Commission from taking any further action with respect to Silverhatband' s Complaint until further notice of this Court. We held a hearing on the matter and have decided to grant the Writ of Prohibition.

## II. ANALYSIS

We disagree with the Commission's *res judicata* analysis and hold that the doctrine of *res judicata* bars Silverhatband from bringing his claims before the Commission. Consequently, we find it unnecessary to reach the questions of whether Silverhatband is also barred from bringing his complaint on collateral estoppel grounds, or whether federal preemption would prevent the Commission from hearing his complaint.

As we noted recently in *In the Matter of Validation if Marriage of Eva Whitehorse*, the doctrine of *res judicata* prohibits the relitigation of the same dispute. 8 Nav. R. 292 (Nav. Sup. Ct. 2003). The basic rule of *res judicata* is that a party may ordinarily not assert a civil claim arising out of a given transaction if he has already litigated a claim arising out of that transaction, even if the two claims are not exactly the same. Rest 2d Judg 1 Scope (1982).

*Res judicata* is recognized as an affirmative defense in the Navajo Rules of Civil Procedure. Rule 8(c)(2)(H), Nav. R. Civ. P. (1989 ed.). The doctrine has long been part of Navajo common law, as we noted in *Halwood v. Badonie*.

> Navajo people in their traditional practices on dispute resolution are not strangers to the effect of *res judicata*. Traditionally, after everyone who had an interest in a controversy had their say and the controversy was finally decided, it was respected. ..."This has been the Navajo way since before the time of the present judicial system. The Navajo people did not learn this principle from the white man. They have carried it with them through history." R. 16, 17 (1988) (quoting Halona v. MacDonald, 1 Nav. R. 189, 205 (1978)).

*Res judicata* serves a number of important legal and social ends. It promotes efficiency in the administration of justice by conserving scarce judicial resources. *Halwood*, 6 Nav. R. at 17. It also prevents the occurrence of inconsistent outcomes that could result if the same claims, involving the same parties, were adjudicated by different courts of equal jurisdiction. Such limitations preserve the finality of judgments and, with it, the stability of the legal system as a whole.

Furthermore, the doctrine of *res judicata* promotes fairness between parties. *Id*. Without this limitation on relitigation, losing parties would have a strong incentive to keep relitigating their claims until they received a more favorable judgment. Winning parties would be forced to expend extra time and money relitigating the same claims. That situation would advantage the losing side of every case an outcome that is in conflict with the fundamental principle of fairness.

Although this Court has relied on the doctrine of *res judicata* in prior cases, we have not previously articulated a clear test for determining the conditions under which it applies. In *Yazzie v. Navajo Nation*, 1 Nav. T.R 239 (W.R. Dist. Ct. 1988), the Window Rock District Court adopted the following test. In order for the doctrine to be applicable, four elements must be met: (1) the parties in the second action must be the same as or in privity with the parties in the first action; (2) the cause of action must be the same, or must arise from the same transaction or event, in both actions; (3) there must have been a final decision in the first action, and (4) the first decision must have been on the merits. *Id.* We affirm and clarify that test today.

The Commission held that *res judicata* does not apply in this case because the arbritator's decision was limited to Silverhatband's claim under the terms of the Labor Agreement and did not address whether Silverhatband' s claims constitute violations of the NPEA.

We disagree with the Commission's understanding of the second element of the doctrine of *res judicata*, and its applicability to this case. Two causes of action arising from the same transaction are the same if the claims are *substantially similar*. Claims may be deemed substantially similar if the relevant evidence and the applicable rules of law are the same.

Initially, Silverhatband's main grievance against Peabody was that he was terminated without just cause. His grievance was arbitrated under Article XXI(a) of the Labor Agreement, which states that "No employee covered by this Agreement may be disciplined or discharged except for just cause. The burden shall be on the Employer to establish grounds for discharge in all proceedings under this Agreement." In his grievance, Silverhatband did not deny that he reported to work in an unfit condition. He alleged that he was nevertheless discharged without just cause because he was treated differently from other employees who had reported to work in an unfit condition. The arbitrator found that Peabody had proven, by clear and convincing evidence, that it did have just cause to discharge Silverhatband and that he was not treated in a discriminatory manner.

Later, in his Complaint before the Commission, Silverhatband repeated his claim that he had been treated differently than other employees who had committed similar offenses. He alleged that he had been singled out and retaliated against for his union activities and for winning an earlier arbitration decision against Peabody. He also alleged that the arbitration hearing was procedurally defective. As noted earlier, the Commission dismissed Silverhatband's claims regarding the alleged procedural defectiveness of the arbitration hearing, but it deemed the other-that he was treated discriminatorily and that his discharge had been without just cause-could be brought under the NPEA. The termination provision of the NPEA states that "All employers shall not penalize, discipline, discharge nor take any adverse action against any Navajo employee without just cause." 15 N.N.C. § 604(B)(8). The anti-discrimination

provision requires that "All employers shall... provide employment conditions which are free of prejudice, intimidation and harassment." 15 N.N.C. § 604(B)(9).

The Commission's adjudication of Silverhatband's claim that he was terminated without just cause would involve a hearing of substantially similar evidence as was heard by the arbitrator and the application of substantially similar rules of law to that evidence as were applied by the arbitrator in his decision.[1] The doctrine of *res judicata* therefore applies to bar Silverhatband from bringing that claim before the Commission.

It is not clear from the record whether, in the grievance he submitted to arbitration, Silverhatband alleged that he was retaliated against for his union activities and for winning a prior arbitration award. If not, he could easily have included such a claim; Article XXII of the Labor Agreement specifically prohibits discrimination on the basis of "political activity, whether Intra-Union or otherwise."

Assuming that this claim was not part of Silverhatband's initial grievance, it would nevertheless not count as a "new" claim when made before the Commission. As the second element of the test specifies, *res judicata* applies not only to claims that have already been litigated in a first action, but also to all other claims that grew out of the same transaction or event and therefore *should* have been litigated in the first action. In this case, all of Silverhatband's claims arise from his termination and they should therefore all have been raised together in his initial grievance.

However, we would like to make clear that claims regarding the arbitration process, either on the merits or on procedure, would *not* be barred by *res judicata* because such claims are new and distinct from the transaction or event that gave rise to the initial complaint. As we noted above, the Commission has held that it does not review arbitration decisions and thus dismissed Silverhatband's claims alleging that the arbitration procedures were defective. That part of the Commission's decision was not appealed and those claims, therefore, are not before us. However, employees who feel that the arbitrator's decision on the merits was flawed or that the arbitration procedure was unfair may have remedies available to them in the appropriate court.

We also note that there may be exceptions to the general applicability of the doctrine of *res judicata* when the claims in question are claims of racial- or gender-based discrimination. *See e.g., McDonald v. City of West Branch*, 466 U.S. 284 (1984); *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182 (9th Cir. 1998). We do not

[1] It is perhaps worthy of note that Peabody would carry a lower burden of proof in a hearing before the Commission than it carried at arbitration. According to the terms of the Labor Agreement, Peabody must prove, by *clear and convincing* evidence, that it has complied with its duties under the Agreement. By contrast, the NPEA requires only that it prove its case by a preponderance of the evidence - an appreciably lower burden of proof. *See Manygoats v. Cameron Trading Post*, 8 Nav. R. 3 (Nav. Sup. Ct. 2000).

rule on such a possibility because such claims are not presently before the Court.

We hold that the Commission is barred from hearing Silverhatband's claims by *res judicata* and thus find it unnecessary to reach the question of whether it is also barred from doing so on collateral estoppel or federal preemption grounds.

The Writt of Prohibition is GRANTED.