OPINION

This case comes before the Court on a petition for writs of mandamus and superintending control. The Court denies the request in part, but grants a permanent writ of superintending control to lift a gag order and a permanent writ of mandamus vacating a jury trial fee and requiring the District Court to explain the amount Petitioners must deposit to hold a jury trial.
I
This case arises out a civil case Petitioners Jackie Johnson and Heather Nicoll (Petitioners) filed against Real Party in Interest Louise Yellowman (Yellowman) in Tuba City District Court (District Court). The case concerns several transactions between the parties involving a trailer space Petitioners rented from Yellowman and a horse trailer Petitioners sold to Yellow-man. Yellowman previously had filed a forcible entry and detainer action against Petitioners, alleging they were delinquent in paying their rent. The District Court ruled in favor of Yellowman in that case, and ordered Petitioners to remove their trailer from the space. Instead of appealing, Petitioners entered into a settlement agreement with Yellowman allowing them additional time to remove their trailer.
This petition arises directly from several orders of District Court. First, at a pre *569 trial conference, the District Court informed Petitioners that it believed several of the claims in their complaint were foreclosed by the court’s prior ruling in the forcible entry and detainer case. The District Court required Petitioners to review their complaint, and voluntarily dismiss those claims that the court believed were barred by res judicata. See Bradley v. Lake Powell Medical Center, No. SC-CV-55-05, 7 Am. Tribal Law 500, 523-24, 2007 WL 5886718 at *3-4 (Nav.Sup.Ct.2007) (defining and setting out elements of res judicata). Petitioners motioned the District Court for leave to amend their complaint, which the court denied as untimely. The Court ultimately dismissed those claims in Petitioners’ complaint it considered barred by res judicata. It also awarded sanctions in the form of attorney’s fees for Yellowman’s attorney under Rule 11 of the Navajo Rules of Civil Procedure for Petitioners’ failure to dismiss the allegedly barred claims. Secondly, Petitioners also requested a jury trial. The District Court ordered Petitioners to prepay costs of $1500 to hold the jury trial. The order requiring prepayment gives no explanation of how the court came to that amount. Finally, the District Court also issued an oral “gag order” preventing the parties from discussing the case with anyone while It was pending before the court.[1] As a result of these orders, Petitioners filed their petition for writs of mandamus and superintending control.
II
The issues in this case are 1) whether Petitioners have an adequate remedy at law to challenge the District Court’s orders; 2) whether the District Court can impose an oral gag order on the parties prohibiting them from discussing the case; 3) whether the District Court’s requirement of prepayment of jury fees was proper; and 4) whether the judge should be disqualified from future proceedings in the case.
III
Petitioner requests two different writs, asking the Court to vacate several orders of the District Court. Writs are extraordinary remedies issued only when there is no plain, speedy and adequate remedy at law. Hurley v. To’hajiilee Family Court, No. SC-CV-44-05, 6 Am. Tribal Law 680, 681, 2005 WL 6235955 at *1 (Nav.Sup.Ct.2005). The Court has discretion whether to issue a writ; it is not required to do so merely because the facts as alleged by the petitioner fit within the writ the petitioner requests. A writ of mandamus is appropriate if the District Court has a non-discretionary duty to act in some way, and has failed to do so. See In re A.P. v. Tuba City Family Court, No. SC-CV-02-05, 6 Am. Tribal Law 662-63, 2005 WL 6235943 at *1-2 (Nav.Sup.Ct.2005). A writ of superintending control is appropriate when the District Court abuses its discretion in an egregious way, requiring this Court’s intervention. Id.
IV
Before the Court considers the validity of the District Court’s orders, the Court must decide the threshold question whether there is an adequate remedy at law for each writ request. Petitioners contend that there are no adequate remedies at law for any of the orders they claim are invalid because none of the orders are final orders for purposes of appeal. The District Court states that all of the challenged *570 orders can be appealed. The District Court characterizes this Petition as an improper interlocutory appeal, which it reminds the Court is prohibited. See Wilson v. Van Keuren, 7 Nav. R. 106, 106 (Nav.Sup.Ct.1994). According to the District Court, because all of the orders can be appealed once it issues a final order, there is always an adequate remedy at law. Yel-lowman concurs with the District Court, and makes no additional arguments on this issue.
The Court agrees that the issues concerning the applicability of res judicata, and the appropriateness of sanctions can be brought up on appeal, but holds that there are no adequate remedies at law for the gag order, jury trial, and disqualification issues. In Hurley, the Court discussed the “adequate remedy at law” requirement, and stated that there is no adequate remedy if' there would be potential damage to a litigant that is irreversible on appeal. No SC-CV-44-05, 6 Am. Tribal Law at 681-82, 2005 WL 6235955 at *1-2. The Court noted past actions by courts or administrative agencies that caused such potential damage, including, importantly, the denial of a jury trial. See id.; see also Duncan v. Shiprock District Court, No. SC-CV-51-04, 5 Am. Tribal Law 458, 2004 WL 5658109 (Nav.Sup.Ct.2004) (granting wit to remedy denial of jury trial). The Court denied the writ in Hurley because the Court characterized the Petitioners’ request to be merely seeking an interpretation of a statute, which could be dealt with adequately on appeal. See Hurley, No. SC-CV-44-05, 6 Am. Tribal Law 680, 682, 2005 WL 6235955 at *2. The Court will issue a writ when the denial of res judicata, would result in a party potentially going through an entire trial needlessly if the claim should have been barred. See Peabody Western Coal Co. v. Navajo Nation Labor Comm’n, No. SC-CV-14-03, 4 Am. Tribal Law 650, 2003 WL 25794132 (Nav.Sup.Ct.2003). However, Petitioners’ request here is different, in that they seek this Court’s ruling on whether res judicata, justified the District Court’s dismissal of several counts of their complaint and the award of sanctions for their failure to do voluntarily dismiss those claims. The Court holds that such a request concerns a difference in opinion on whether the elements of res judicata are met, and is therefore a legal question that can be adequately answered on appeal.
Further, the award of attorney’s fees causes no damage that would be irreversible on appeal. Ordinarily the award of fees is done at the end of a case when one party or the other prevails, and this Court would decide whether the award was appropriate as part of an appeal. The party required to pay the fees would make the payment pending the outcome of the appeal, unless the district court or this Court issued a stay on the judgment. See Rule 25, Navajo Rules of Civil Appellate Procedure. If the district court was wrong to award fees, this Court would vacate the award. Though in this case the District Court awarded fees at the pretrial stage, the payment of such fees before the end of the case does not cause “irreversible damage” to Petitioners. If the District Court’s interpretation of Rule 11 is incorrect, the Court on appeal can simply vacate that award and the party who received the fees would pay them back.
In contrast, this Court holds that the alleged denial of a jury trial, the “gag order” preventing discussion of the case, and the possibility that a biased judge may sit on the case to its completion all involve potential damage that cannot be adequately remedied on appeal. The Court cannot adequately correct the violation of the *571 right to a jury trial, the right to speak freely about a case, or the damage to the parties and the judicial system if a biased judge hears a case. The Court therefore will not consider any issues concerning res judicata and Rule 11, but will consider the appropriateness of the “gag order,” the jury trial fee, and disqualification of the District Court judge.
V
Petitioners argue that the oral “gag order” is invalid, as it violates Petitioners’ right of free speech, and allegedly prevents them from hooking up utilities to their trailer.[2] The District Court makes no argument on this issue. Yellowman contends the gag order is valid, as it prevents negative publicity in the Tuba City community that might prejudice a jury against her because of her alleged prominence in the community.[3]
Though both Petitioners and Yellowman discuss the order, neither clearly defines what “gag order” means. Apparently the District Court prohibited the parties from “disclosing any matter in this case to the public or to any news media.” Petition at 19. Therefore, for purposes of this ease, the Court interprets “gag order” to mean a court-ordered prohibition on revealing the existence of a pending case or any information concerning the proceedings to any outside person or entity.
Before considering the appropriateness of a gag order generally, the Court first notes that an oral order, whatever its subject, is ineffective. Court- orders are not effective until put into writing. See Kascoli v. Kascoli, No. SC-CV-08-05, 6 Am. Tribal Law 700, 700-02, 2005 WL 6236463 at *1-2 (Nav.Sup.Ct.2005) (under Rule 58 of the Navajo Rules of Civil Procedure). Therefore, the Court could merely state that the oral gag order cannot prevent disclosure of anything, not because courts lack authority to issue gag orders, but because they lack authority to enforce oral orders at all.
However, as the district court may simply put its order into writing, if it has not already done so while this case has been pending, the Court holds that absent clear, written justification, a gag order may not prevent parties from disclosing public court information. Generally information on court proceedings is open to the public, so that the Navajo people may know' what its courts are doing. See 2 N.N.C. § 84(A)(7) (2005) (Privacy Act provision stating that “judicial records” are generally “public records” that must be disclosed when requested). The Navajo Nation Code prohibits court staff from distributing certain types of court information, requires certain proceedings to be closed to the public, and prohibits certain people from revealing information concerning specific types of cases. See 2 N.N.C. § 85 (2005) (Privacy Act provision defining “protected records” that cannot be disclosed by government); 9 N.N.C. § 1115(B)(1) (2005) (requiring that dependency and child-in-need of supervision cases be closed to the public); § 1115(B)(2), (C) (allowing presence of news media representatives in closed hear- *572 tags under certain circumstances, but prohibiting divulging of certain information from hearings). There is no general prohibition on parties revealing information on their cases or authorization for courts to impose such prohibition. It then appears that authority to issue a gag order is within the sound discretion of the district courts. Cf. Navajo Nation Dept. of Child Support Enforcement v. Navajo Nation Labor Comm’n, No. SC-CV-22-06, 6 Am. Tribal Law 801, 802, 2006 WL 6168956 at *2 (Nav.Sup.Ct.2006) (Labor Commission has discretion to close hearings in the absence of Code provision mandating closure).
Though the district courts have discretion to issue a gag order, the courts must carefully consider such a significant restriction on the parties, and, importantly, justify it with clear reasons. Importantly, a gag order is a more significant a restriction than the sealing of case files or closing of proceedings to the public, as it not only shields certain cases from public scrutiny, but also restricts the ability of the parties to freely discuss their situation. The general policy of the Navajo Nation is that court proceedings are open to the public and information on court proceedings is public information unless statutorily restricted, and it is therefore especially important that any restriction on the parties to discuss their case with the public be justified.
The gag order in this case is improper, as the District Court provided no written justification for its order. That is an abuse of discretion. See Watson v. Watson, No. SC-CV-45-03, 6 Am. Tribal Law 644, 647, 2005 WL 6235871 at *2 (Nav.Sup.Ct.2005) (discretionary decisions must include reasons). The parties and this Court cannot know why the District Court imposed the gag order, and have no way to judge whether it was valid.[4] As the abuse of discretion is egregious, in that it significantly restricts the ability of the parties to speak freely about their own case, the Court issues a writ of superintending control vacating any oral or written gag order.[5]
VI
Next, Petitioners argue that the District Court improperly required them to deposit $1500 to cover costs of their jury trial. Petitioners assert that there is no authority to require prepayment of such costs, and that to require such costs violates their right to a jury trial under the Navajo Bill of Rights. See 1 N.N.C. § 7 (2005) (recognizing right to jury trial in civil cases). The District Court makes no argument on this issue. Yellowman cites Section 658 of Title 7 of the Navajo Nation Code as authority to require prepayment of costs of a jury trial.
Based on Section 658, district courts may require prepayment of costs of a jury trial from those who can afford to make payment, and such requirement does not violate the right to a jury trial. That section states that
The party demanding a jury trial in a civil action may be required to prepay *573 the mileage and compensation of jurors, and other costs of a jury trial. Prepayment of such costs shall not be required if the party is proceeding in forma pau-peris or if prepayment would deny that person the right to a trial by jury.
7 N.N.C. § 658(B) (2005). Section 658 authorizes courts to require prepayment, and protects the right to a jury trial by limiting such prepayment to those who can afford to prepay such costs. The Court reads the phrase “if prepayment would deny that person the right to a trial by jury,” to mean that if a party cannot prepay such costs, a requirement to nonetheless prepay costs before a jury is called violates the right to a jury trial. Importantly, the inability to pay is not coextensive with a party’s in forma pauperis status, as even parties who are not indigent may not be able to prepay the potentially significant costs of holding a jury trial. Fairness requires that parties not be denied them right to a jui-y trial merely because they cannot immediately afford the costs of holding one. However, the Court holds that the requirement to prepay jury costs is not, in and of itself, a violation of a party’s right to a jury trial.[6]
That is not the end of the Court’s inquiry, as the Court further holds that a district court must explain the amount it requires the party to prepay, and must allow that party to challenge that amount. As discussed above, the right to a jury trial is a fundamental right, and the authority of a district court to require prepayment is dependent on the ability of the party to pay. Fairness requires a district court to not just set an amount, but also to explain how it arrived at that amount and why such an amount is necessary. This means that the district court must explain where the amount it requires comes from, not just set out an amount and refuse to call a jury until the amount is paid. Further, the party requesting a jury trial must be allowed to argue to the court that he or she cannot afford to prepay the costs. As the District Court did not explain its amount or allow Petitioners to contest it, the Couxt will issue a permanent writ of mandamus vacating the $1500 jury fee, as the duty of the District Court is mandatory.
VII
Finally, Petitioners ask the Court to disqualify the judge from future proceedings in the case. Petitioners argue that the judge’s conduct in this case creates an appearance of impropriety, as the judge allegedly dismissed Petitioners’ claims and imposed sanctions because Real Party in Interest is a “public political figure.”[7] Petition at 20. Petitioners allege the judge improperly helped Yellowman, and that the judge’s bias prevents them from receiving a fair trial. The District Court argues that the judge is not biased, and that her conduct does not justify disqualification. Yellowman also argues there is no evidence of bias in the record.
The Court will not disqualify the judge. A judge must disqualify himself or herself when he or she has a personal bias through prejudice or personal knowledge. Wirtz v. Black, No. SC-CV- *574 09-06, 7 Am. Tribal Law 553, 556-57, 2007 WL 5886402 at *2-3 (Nav.Sup.Ct.2007). Such bias or prejudice can be shown through statements of the judge indicating he or she favors or disfavors one of the parties, and therefore cannot be objective in considering the case. Bias may also be shown if the judge’s treatment of one of the litigants is so egregious that the judge’s ability to be fair and impartial is in question. See id. at 557, 2007 WL 5886402 at *3; see also McCabe v. Walters, 5 Nav. R. 43, 49-50 (Nav.Sup.Ct.1985). In Wirtz, the judge ordered one party’s arrest for non-appearance at a civil hearing, despite that party’s explanation that she was confused over the hearing date. No. SC-CV-09-06, 7 Am. Tribal Law at 557-58, 2007 WL 5886402 at *3. She was subsequently arrested while attending a domestic violence hearing, and required to attend that hearing in jail clothing. Id. The Court concluded that such treatment was egregious, and showed bias, requiring the judge’s removal from the case. Id. at 557-58, 2007 WL 5886402, *3-4. The facts of this case do not show similarly egregious conduct, and there is nothing else to suggest the District Court’s rulings were motivated by bias towards Yellowman.[8] Allegedly incorrect rulings, by themselves, do not show bias, see McCabe, 5 Nav. R. at 50, and absent any other evidence in the record, the mere fact that the judge dismissed claims and issued sanctions against Petitioners is not enough to justify disqualification.
VIII
Based on the above, the Court DENIES in part Petitioners’ request for writs of mandamus and superintending control, but GRANTS a permanent writ of superintending control to vacate any oral or written gag order and a permanent writ of mandamus vacating the jury trial fee and requiring the District Court to explain the amount Petitioners must deposit to hold a jury trial and to provide Petitioners the opportunity to contest that amount.

. As the District Court did not issue a written "gag order" it is unclear exactly the scope of the order’s prohibition on disclosure. See infra, at 570.

. Petitioners provide no support for their allegation that they cannot hook up utilities because they cannot discuss the case. The Court does not need to decide whether this allegation is true for purposes of the discussion whether the “gag order" is valid. See infra, at 570-71.

. Yellowman does not provide any evidence that her alleged prominence in the community would affect the objectivity of a jury. Like Petitioners' allegations, see supra, at 570 n. 2, it is not necessary' to decide whether Yellow-man’s allegations are true for purposes of this discussion.

. The Court notes that the District Court provided no explanation for its gag order in its response to the petition. Indeed, the District Court made no attempt at all to argue that its order was valid.

. Even if the Court upheld the gag order, the existence of this Court’s opinion is a matter of public record, and will be freely distributed throughout the Nation and to the press, ft is unclear what purpose the gag order would serve, if its main purpose is to prevent disclosure of the existence of the District Court case and its basic facts.

. Of course, a district court may use its discretion to find other ways to cover the costs of a jury trial. Such other ways might include a structured series of payments by the party requesting the jury or the court fronting the initial costs and deducting costs from a judgment.

. Like Yellowman's own allegations concerning her prominent status in the community, see supra, at 571, n. 3. Petitioners include no evidence to support their characterization of Yellowman as a ‘‘public political figure.”

. Petitioners do no claim that the gag order justifies disqualification. Even if the Court considered the order, it does not warrant disqualification of the judge, because it was not directed at Petitioners, but applied to both parties. Though characterized above as an "egregious” abuse of discretion, supra, at 572, it, without more, does not suggest bias against Petitioners.