OPINION

This case concerns an appeal of a criminal conviction of abuse of office and sentence requiring forfeiture of office upon conviction. We have thoroughly reviewed the record and heard oral arguments. We affirm the Shiprock District Court’s decision.
I
After the arrest of his sister, Anita Garcia (Garcia), and his niece, Floydina Had-ley (Hadley), on allegations that they committed the crimes of burglary and theft, Judge Roy Tso, Jr. (Tso) called Ruby Be-nally (Benally), a local prosecutor, at approximately 11:30 p.m., on June 23, 2013. Tso identified himself and explained that he wanted his sister and niece released from jail that night. Benally knew Tso to be a former prosecutor and a sitting judge. Benally informed Tso that the law does not permit a person detained pursuant to a police hold to be released from jail that same night. Nonetheless, as a result of Tso’s call, Benally felt compelled to call the Shiprock Department of Corrections and inquire of Garcia and Hadley’s arrest, charges, and hold. Benally did not call Tso back. Between 1:30 a.m. and 2:00 a.m., on June 24, 2013, Tso placed a second call to Benally. Recognizing the displayed caller ID as the same telephone number from which she had earlier received Tso’s call, Benally did not answer. Between 6:15 a.m. and 6:30 a.m., on June 24, 2013, Tso contacted Benally again, this time by text message asking when his sister and niece would be released. Benally did not respond to the text message. Benally testified she found Tso’s request inappropriate and left her feeling intimidated. Be-nally did not know how Tso obtained her phone number but testified that he may have obtained it from a mutual friend, Sharon Williams (Williams).
Benally and Williams later met on July 14, 2013 in Aztec, New Mexico at the request of Williams. Benally believed the meeting was concerning Williams’s business venture. Instead, the meeting concerned the criminal charges against Garcia and Hadley. Benally understood, through Williams, that Tso and Garcia were offer *470 ing $750 dollars for the dismissal of criminal charges against Garcia and Hadley.
On August 15, 2014 the Navajo Nation (Nation) charged Tso with Abuse of Office in violation of 17 N.N.C. § 364(A)(8). After a bench trial, Tso was convicted on December 18, 2015. The trial court found Tso took advantage of his official capacity as a Navajo Nation judge, knowing his conduct in interfering with and attempting to prevent the lawful detention and prosecution of his relatives was unlawful, and impeded investigative and prosecutorial powers. A Sentencing Hearing was held on February 25, 2016 wherein the trial court verbally announced its sentence. Of particular concern in this appeal, the trial court denied the Nation’s motion that Tso forfeit his office of a Navajo Nation judge pursuant to 17 N.N.C. § 365. On March 2, 2016 the district court issued a Sentencing Order. The trial court affirmed its oral decision of February 25, 2016 with one exception: the trial court reconsidered its prior decision and ordered Tso to forfeit his office as judge having determined that upon conviction, forfeiture automatically occurred.
I
Due to the procedural and evidentiary challenges, we offer the underlying procedural history. Tso was charged on August 15, 2014. Tso, through counsel, waived his appearance for arraignment and entered a not guilty plea on October 9, 2014. After a scheduled pretrial conference was continued at Tso’s request, a pretrial conference was eventually held on December 16, 2014. Tso’s counsel failed to appear and became the subject of an order to show cause. Even so, the Nation and Tso himself filed a Pre-Trial Conference Report noting the Nation disclosed all evidence and the parties identified witnesses and established a deadline of January 13, 2015 for the filing of pretrial motions. The court also set a final pretrial conference. The Pre-Trial Conference Report was filed in anticipation of a bench trial to be held on May 7-8, 2015.
On February 2, 2015 the Nation filed a witness list and, on March 12, 2015, it amended that list. After several continuances, a final pretrial conference was held on March 10, 2015 and a final Pre-Trial Conference Report was filed. The report identified additional evidence and extended the pretrial motion deadline to April 29, 2015.
On May 7, 2015, the first day of trial, Tso filed a motion to dismiss claiming the Nation failed to file a statement of compliance within 20 days of trial to verify it has fully met its disclosure obligations under Rule 25 of the Navajo Rules of Criminal Procedure. Tso argues this failure warrants dismissal for lack of prosecution. The trial court halted the trial and scheduled a hearing on the motion. Later that same day, the Nation filed a response stating pre-trial conference reports were previously submitted verifying that all evidence had been disclosed and the deadline for filing such pretrial motions, like the motion to dismiss, had passed. Tso responded stating disclosure required the Nation to provide a list of evidence it will use at trial and a complete list of witnesses with their addresses.
In preparation for the rescheduled trial set for August 12-13, 2015, the Nation notified Tso of the Open File Policy on May 8, 2015, stating its prosecution file is available for inspection, copying and/or scanning. On May 18, 2015, the Nation filed a Statement of Compliance.
On June 25, 2015 a hearing on the motion to dismiss was held. Subsequently, on July 22, 2015, the trial court denied Tso’s motion to dismiss stating a dismissal *471 of technical grounds is not favored under Black v. Bigman, 8 Nav. R. 177, 180, 3 Am. Tribal Law 514 (Nav.Sup.Ct.2001), and the Nation has engaged in active prosecution. The trial court rejected Tso’s argument that he was unable to file pretrial motions to challenge or request for additional disclosure when the Nation did not file a statement of compliance.
On August 10, 2015, Tso filed a motion for reconsideration of the trial court’s decision to deny dismissal reiterating its previous position and adding that Black v. Bigman is not applicable to criminal proceedings. Tso also requested to continue the bench trial (set for August 12-13, 2015) and for a new judge to be assigned. Later that same day, the Nation responded to the motion for reconsideration asserting Tso, once again, has filed an untimely pretrial motion. The Nation reiterated it made full disclosure and provided notice of compliance in the previously held pretrial conferences. On August 11, 2015, Tso filed a reply noting its disagreement that the Nation’s handing over a box of files and making copies is sufficient to meet Rule 25. On August 11, 2015, the trial court denied Tso’s motion for reconsideration along with his requests to continue the trial and assign a new judge.
Trial was held on August 12-13, 2015. The Nation called upon Officer Alesia Barber (Barber) and Benally to testify at trial. Tso, on the other hand, called Benally as his only witness. Of concern is the eviden-tiary exchange of Benally as a witness for the prosecution and subsequently, as a witness for the defense. During the Prosecution’s direct examination of Benally, the Prosecutor attempted to delve into the Be-nalfys conversation with Williams about the attempted bribery of July 14, 2013. Tso objected to the introduction of hearsay evidence and the trial court agreed sustaining his objection. After the close of the Prosecution’s case, Tso called Benally as his lone witness and asked Benally about her conversation with Williams concerning the $750 offer. On cross-examination, over the objections of Tso, Benally was permitted to testify in detail about her communications with Williams.
After taking matters under advisement, the Shiprock District Court convicted Tso of Abuse of Office on December 18, 2015. A Sentencing Hearing was held on February 25, 2016 and the trial court verbally announced its sentence. On March 2, 2016 the district court issued a Sentencing Order. This appeal followed. Tso raises a number of procedural and evidentiary challenges. Oral argument was held on June 10, 2016 at the Navajo Nation Bar Association’s Annual Conference. Based on our review, we affirm.
II
The issues are 1) whether the trial court violated Tso’s right to due process when it permitted disclosure of evidence under the “open file” rule; 2) whether the trial court violated the Navajo Rules of Evidence; 3) whether the Navajo Nation’s contract prosecutor and Benally engaged in prose-cutorial misconduct when the trial court admitted testimony of Williams’s communication with Benally and whether the trial court erred in denying Tso’s motion to strike that testimony; 4) whether the trial court’s correctly found all elements of Abuse of Office were proven beyond a reasonable doubt; and 5) whether the trial court erred when it reconsidered its oral sentence and issued a written order ordering Tso to forfeit his office.
III
We have held that the, “standard of review in criminal cases focuses upon the essential fairness of the proceedings.” Navajo Nation v. MacDonald, 6 Nav. R. 432, 433 (Nav. Sup. Ct. 1991). Specifically, *472 “[i]n order to reverse a conviction, there must be prejudicial error. Id. “That sort of error must affect and deny substantial rights, but where it is harmless in its effects, it will be disregarded.” Id. The Court will “scrutinize the record and the error complained of to ascertain whether it clearly harmed the defendant, and obviously affected the outcome.” Navajo Nation v. Platero, 6 Nav. R. 422, 428 (Nav. Sup. Ct. 1991). Moreover, in reviewing a conviction, “[cjriminal convictions and the application of the Navajo Nation Bill of Rights will be reviewed in light of the fundamental principles of Navajo common law.” MacDonald, 6 Nav. R. at 433. Finally, “[o]n review, in determining whether evidence is sufficient to support the defendant’s conviction, we will review the evidence in the light most favorable to the Navajo Nation, and resolve all reasonable inferences against the defendant.” Navajo Nation v. Murphy, 6 Nav. R. 10, 15 (Nav. Sup. Ct. 1988).
For evidentiary matters, this Court applies an “abuse of discretion standard.” John v. Navajo Nation, 10 Am. Tribal Law 40, 41 (Nav.Sup.Ct.2011). A trial court abuses its discretion if its decision is “capricious and arbitrary.” Id. Therefore deference is given to the trial court’s ruling, and an evidentiary decision will be reversed only if capricious and arbitrary. Under Rule 2(a) of the Navajo Rules of Evidence, error may be assigned when an evidentiary ruling which admits and excludes evidence affects a party’s substantial rights. Id. Further, if eviden-tiary rulings are “outside the boundaries of the Navajo Rules of Evidence, those rulings are not entitled to deference[.]” Id.
IV

A. Rule 25 of the Navajo Rules of Criminal Procedure

Tso argues his due process rights were violated when the trial court disregarded Rule 25 of the Navajo Rules of Criminal Procedure as he could not adequately prepare for trial. Tso asserts the Nation’s disclosure of evidence under the “open file” rule does not cure the Nation’s duty to list all evidence it will use at trial (Rule 25(b)(3)), list all witnesses with addresses it intends to use (Rule 25(b)(a)), and file a statement of compliance at least 20 days prior to trial (Rule 25(f)). Tso argues these are all mandated obligations and when the trial court denied his motion to dismiss even after asserting these arguments, it committed reversible error.
Despite Tso’s oral argument that there is no precedent as to this Court’s acceptance of the open file rule, this Court has addressed similar arguments in Acothley v. Window Rock District Court, 10 Am. Tribal Law 25 (Nav.Sup.Ct.2011). In Acothley, we said “Rule 25(b) and (c) requires only that the information be made available pursuant to what has been described as an ‘open file rule.’ ” Id. at 30 (citing Navajo Nation v. Bigman, 3 Nav. R. 231, 231 (W.R. Dist. Ct. 1982) (adopting the “open file” rule)). The “information” is made available to the defendant for examination and reproduction demanding full disclosure of the government’s prosecution file in the interest of fundamental fairness. See Bigman, 3 Nav. R. at 231-232. Because the scope is broad and can encompass any matter, see id. at 232, the requirement that only the information be made available extends to Rule 25(a). Defense counsel has a duty to prepare for trial and the means to request for additional information. Id. at 232. Furthermore, we also said no rule requires mandatory dismissal upon violation of discovery and pretrial time requirements. Acothley, at 30.
Tso was afforded an opportunity to prepare for trial. Well in advance of trial, the Nation filed Pre-Trial Conference Reports *473 declaring the Nation disclosed all evidence and identified witnesses to be called at trial. The reports were filed after the parties met face-to-face and discussed disclosure and discovery matters. The Nation also provided Tso with two separate witness lists months prior to trial. Moreover, the Nation did not call upon any person not listed as a witness. According to Tso, the Nation also supplied his defense with boxed copies of all material and information within its possession or control, surpassing requirements under the rules. The Nation also filed a Statement of Disclosure documenting that its files were open for review and copying. The Nation also restricted its prosecution to the evidence disclosed and no new evidence was introduced at trial.
Despite the Nation’s prosecution, noted above, Tso waited until the day of the May 7, 2015 trial to bring forth his Rule 25 concerns. Nonetheless, the trial court stopped the trial upon the filing of Tso’s motion to dismiss, giving Tso and the Nation an opportunity to fully brief the matter. The trial court eventually denied the motion based on the procedural history, including Tso’s eleventh-hour filing of his motion, and the merits of Tso arguments. We find the trial court ruled within the bounds of Acothley in moving the case forward. “While the [Nation] has the burden of proving every element of the offense beyond a reasonable doubt, it is not required to anticipate and rebut defenses.” Platero, 6 Nav. R. at 428. In general, Tso had knowledge of all possible documentary and testimonial evidence available to the Nation, and the opportunity to acquire further information to assist his defense. Tso’s due process rights were not violated.

B. Navajo Rules of Evidence

Tso asserts the trial court violated the Navajo Rules of Evidence by admitting improper evidence into the record. According to Tso, the trial court admitted allegations of other criminal offenses not charged in the complaint (e.g., bribery, theft, threatening, and receiving stolen property) to be used against him. As a result, Tso also asserts the trial court admitted improper character evidence and evidence as to the investigation of Tso’s relatives to establish “guilt by association.” Furthermore, Tso asserts that the trial court improperly admitted hearsay evidence of communications by Williams to Benally.
The trial court did not admit evidence of uncharged criminal offenses to prove, or even to suggest, that Tso committed those offenses. Based on the trial transcript, the trial court admitted certain testimony only after the Nation laid the foundation for its relevance. The trial court admitted testimony of Barber’s investigation as evidence of the underlying reason Tso’s relatives were in custody. Testimony of the monetary offer to dismiss criminal charges was admitted to prove Abuse of Office. Testimony of Barber’s contact with Tso during prior investigations, including the June 23, 2013 investigation, was admitted as evidence of Barber’s knowledge of Tso’s identity. Considering the stated purposes of admission, the trial court did not admit improper character evidence or evidence to establish “guilt by association.”
The trial court also did not err in admitting Williams’s communications to Benally as to the July 14, 2013 meeting. Tso waived his argument of hearsay. Earlier in the trial, the Nation called Benally as a witness and attempted to ask about her communication with Williams. Tso’s counsel objected asserting hearsay and the trial court sustained the objection, terminating all questions. Later Tso’s counsel *474 called Benally as a witness and, in a separate direct examination, asked her specifically about her communications with Williams. Transcript, p. 104, 107. When the Nation followed up on cross-examination with additional questions, Tso objected. The trial court overruled the objection upon the Nation’s ai-gument that Tso’s counsel had “opened the door” on those communications through her direct examination, and therefore could not complain about further questions. We find the evi-dentiary rulings were not outside the boundaries of the Navajo Rules of Evidence and, thus, the trial court did not commit reversible error.

C. Prosecutorial Misconduct

Tso asserts the Nation’s contract prosecutor and Benally cooperated in committing perjury before the trial court when Benally testified on cross-examination about her conversation with Williams. For this reason, Tso further asserts that the trial court committed reversible error requiring reversal when it denied Tso’s post-trial motion to strike Benally’s testimony. As discussed above, the trial court admitted testimony in accordance with the Navajo Rules of Evidence. Allegations of perjury based on purported evidence never introduced or admitted at trial will not be considered.[1] We find no prosecutorial misconduct. We further find the trial court did not commit reversible error in denying Tso’s post-trial motion on unsupported allegations of perjury.

D. Elements of Abuse of Office

Tso appeals his conviction asserting there is insufficient evidence to support his conviction of Abuse of Office under 17 N.N.C. § 364. The Navajo Nation has the duty to prove beyond reasonable doubt each and every element of an offense. Platero, 6 Nav. R. at 429. An offense may be proved by direct or circumstantial evidence. E.g., Platero, 6 Nav. R. at 429-430; MacDonald, 6 Nav. R. at 445; Murphy, 6 Nav. R. at 15; LaMone v. Navajo Nation, 87, 89 (Nav. Sup. Ct. 1982).
“On review, in determining whether evidence is sufficient to support the defendant’s conviction, we will view the evidence in the light most favorable to the Navajo Nation, and resolve all reasonable inferences against the defendant.” Murphy, 6 Nav. R. at 15. Our review of the evidence cannot include a review of the weight or credibility of the evidence because that is exclusively within the trial court’s authority. The test is “whether a reasonable jury, viewing the evidence and reasonable inferences there from in the light most favorable to the prosecution, could find the defendant guilty beyond a reasonable doubt.” Platero, 6 Nav. R. at 428 (citing Murphy, 6 Nav. R. at 15).
The relevant portion of 17 N.N.C. § 364 reads:
A person commits abuse of office if he or she acts or purports to act in an official capacity, or takes advantage of such actual or purported capacity, knowing such conduct is unlawful, and ... Denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity.

1, Acts or purports to act in an official capacity or takes advantage of such actual or purported capacity

Tso asserts there was insufficient evidence that the first element of Abuse of *475 Office was met. Tso asserts the first element is not met by merely proving that other people knew he was a judge. He argues that the statute requires proof that a defendant “act” in an official capacity or “take advantage of such capacity.” In support of his assertion, Tso states the June 23, 2013 caller did not identify himself as a judge and the call itself did not come from the judge’s office or the court house to prove an act in an official capacity. Tso also states there is no evidence that he called or sent a text message on June 24, 2013. Tso adds just because the call or text came from the same phone number is insufficient. Tso adds the text message did not state the sender was a judge and the text message proposed only a question as to when certain individuals might be released, which is insufficient to prove an act in an official capacity.
A leader does not ever lay down the trust and the laws of the people he or she serves. Thinn v. Navajo Generating Station, 7 Am. Tribal Law 558, 564 (Nav.Sup.Ct.2007). In view of that, a nataani who holds the office of a judge, with the substantial powers of that office entrusted to him by the people, never surrenders the trust and the laws in the eyes of the public. Here, the trial court heard evidence that Tso called Benally on June 23, 2013, identified himself, and then explained that he wanted his sister and niece released from jail that same night; that Be-nally received a second call and a text message on June 24, 2013 from the same phone number used earlier by Tso; that the text message posed a question as to when his sister and niece would be released; that Benally knew Tso having previously worked with him; and that Benally knew Tso was a former prosecutor and a sitting judge. Benally’s testimony was not impeached nor did Tso introduce evidence for purposes of impeaching Benally’s testimony at the hearing, as found by the trial court.
Based upon the evidence presented at trial, the trial court made reasonable inferences that Tso was, in fact, a judge when he called Benally on June 23, 2013 and at all relevant times thereafter; and that Tso was the person who called and sent the text message to Benally on June 24, 2013. The trial court also made a reasonable inference that Tso took advantage of his official capacity as judge given that he was bound by the Navajo Nation Code of Judicial Conduct (November 1, 1991). In particular, the trial court noted:
[Tso], at all relevant times in this matter, had an informed obligation to maintain the integrity of his position as Navajo Nation Court Judge and that this obligation and duty applied at all times to all of [Tso’s] conduct, both as a Judge serving in his official capacity and in the way he conducted his personal business as a citizen of the Navajo Nation.... [Tso], as a Navajo Nation Judge, had an ongoing informed duty to avoid impropriety and the appearance of impropriety in all of his activities; had a duty to comply with the laws of the Navajo Nation; and had a duty not to allow family, clan, or other relationships and activities to influence his judicial conduct or judgment; and had a duty not use the prestige of his judicial office to promote the interests of himself or others.
Order, p. 17-20 (Ship. Dist. Ct. December 18, 2015), R. at 74. The Code serves as a reminder of the high degree of personal integrity required of those who hold judicial office. The Code thus can be used, as in this case, to prove conduct contrary to prestige of judicial office to promote self-interests and interests of family. We thus find the trial court reasonably found Tso took advantage of his capacity as a judge, and thus implicated his office of Navajo *476 Nation judge when he interfered with and attempted to prevent the lawful detention and prosecution of his relatives. Thus, the trial court did not err in finding the first element of Abuse of Office was proven beyond a reasonable doubt.

2. Knowing such conduct is unlawful

Tso asserts there is insufficient evidence to show that he knew his conduct of calling and texting Benally to secure the release of his sister and niece from jail was unlawful. Tso asserts the June 28, 2013 caller merely asked for information and asked “if’ Benally could do anything to get someone released from custody, an inquiry that is not unlawful.
Mental state, such as knowledge, may be proved by circumstantial evidence. Platero, 6 Nav. R. at 429-430 (internal cite omitted). Here, the trial court heard evidence that Tso is a former prosecutor and a sitting judge; that the law does not permit a person detained pursuant to a police hold to be released from jail that same night; that Benally conveyed this information to Tso; that this information is knowledge that any current or former prosecutor would know; that a phone call or text message from a judge asking for a prosecutor to release someone from jail is not normal practice and not normal procedure; and that Benally took these communications as an inappropriate request. The trial court also heard evidence that Benally met with Williams on July 14, 2013 wherein Benally understood that Tso and Garcia, by way of Williams, offered $750 dollars to dismiss criminal charges against Garcia and Hadley.
Based upon the evidence presented at trial, the trial court made a reasonable inference that Tso knew his conduct of requesting a prosecutor to release his relatives from a police hold was unlawful based of his status as a former prosecutor and a sitting judge. As mentioned above, the trial court made a reasonable inference that Tso requested, as opposed to merely inquired, that his relatives be released from jail. Although Tso raises insufficiency arguments as to only the calls and text message on appeal, the trial court made reasonable inferences that Tso made a monetary offer to Benally to dismiss charges against Garcia and Hadley and that Tso knew this conduct was unlawful. Furthermore, the trial court made a reasonable inference that Tso knew his conduct in taking advantage of his capacity as a Navajo Nation judge was prohibited given that he was bound by the Navajo Nation Code of Judicial Conduct. We agree with Tso that a violation of the Code in itself is not unlawful, but the Code can be used, as in this case, to prove knowledge of informed obligations of judicial office.
All things considered, we thus find the trial court reasonably found Tso’s conduct in interfering with and attempting to prevent the lawful detention and prosecution of his relatives was unlawful. Thus, the trial court did not err in finding the second element of Abuse of Office was proven beyond a reasonable doubt.

3. Denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity

Tso asserts there is insufficient evidence that the third element of Abuse of Office was proven beyond a reasonable doubt. Specifically, Tso asserts that Be-nally called the jail on her own initiative and, during that call, Benally did not explicitly request for Garcia and Hadley’s release. Because she acted on her own in calling the jail, Tso asserts she was not intimidated.
At trial, the trial court heard evidence that Tso called Benally on June 23, 2013 and explained that he wanted his relatives *477 released from jail that same night; that Benally found Tso’s call inappropriate and left her feeling intimidated; that, on account of Tso’s call, Benally called detention and inquired of Garcia and Hadley’s arrest, charges, and hold; and that Tso made a second call and followed up with a text message on June 24, 2013 asking when his sister and niece would be released. Although Tso raises insufficiency arguments as to his communications only, the trial court heard evidence that on July 14, 2013 Benally met with Williams wherein Benally was offered $750 to dismiss charges against Garcia and Hadley and she believed that offer to be from Tso and Garcia.
Based upon the evidence presented at trial, the trial court made reasonable inferences that Benally was intimated by Tso’s conduct; that Benally called detention because of Tso’s request; and that Tso’s conduct impeded Barber’s criminal investigation and Benally’s prosecution when he interfered with and attempted to prevent the lawful detention of his sister and niece. We thus find the trial court reasonably found Tso impeded Barber’s exercise of police powers and Benally’s exercise of prosecutorial powers. Thus, the trial court did not err in finding the third element of Abuse of Office was proven beyond a reasonable doubt.
All things considered, after examining the evidence presented to the trial court and the inferences it could draw from that evidence, we find there was sufficient evidence for the trial court to reasonably find that each and every element of the offence was proven beyond a reasonable doubt. Absent any showing of alleged erroneous rulings, we will not reverse the trial court’s decision. Because we must limit our inquiry to whether the court’s judgment was reasonable, not whether we believe it to be correct so as to substitute our judgment for trial court, we affirm the conviction.

E. Forfeiture

Tso asserts the trial court erred by issuing a written decision that contradicts the decision announced in open court at the February 25, 2016 sentencing hearing, thereby unlawfully removing him from his position as judge. At the sentencing hearing, the trial court refused to apply 17 N.N.C. § 365 and stated on the record that it found a judge’s removal from office was subject to conditions and procedures stated at 7 N.N.C. § 352. However, the written order that followed said “Upon careful review of the language of 17 N.N.C. § 365 the court finds good cause to sentence Defendant to permanently forfeit his office of Navajo Nation judge.” Sentencing Order at 6 (Ship. Dist. Ct. March 2, 2016), R. at 92.
Looking to Salt v. Martinez, 8 Am. Tribal Law 131, 134 (Nav.Sup.Ct.2009), the trial court decided the written sentencing order confirms the final judgment of the court. In disagreement, Tso asserts a trial court is bound by its sentencing decision made at the time of the sentencing hearing and cannot change its sentence in a later written ruling according to Baker v. Greyeyes, 11 Am. Tribal Law 25 (Nav.Sup.Ct. 2012). We disagree. In Salt, we reasoned the trial court said if there is a difference between what a court says and what it writes, the written final judgment is recognized unless the affected party is prejudiced. Id. at 134 (citing Gishey v. Begay, 7 Nav. R. 403, 404, 2 Am. Tribal Law 437 (Nav.Sup.Ct.1999)). Although Salt stems from a civil case, we hold it also applies to criminal cases.
17 N.N.C. § 365 reads:
Notwithstanding the provisions regarding sentencing of Chapter 2, Subchapter 2 of this Title, a Navajo Nation employ *478 ee or non-elected public servant convicted of violating any section of this Sub-chapter shall permanently forfeit his or her employment or office.
Under this provision, any Navajo Nation employee or non-elected official must forfeit his or her office upon conviction of Abuse of Office. The reference to Chapter 2, Subchapter 2, refers to the otherwise existing discretion of a district court in sentencing under the Criminal Code. See 17 N.N.C. §§ 220-226. Undoubtedly, § 220(C) recognizes a district court’s judge’s general discretion to “remove a non-elected public servant or Navajo Nation government employee from office[.]” (Emphasis added). In contrast to § 220(C)’s removal provision, which does not apply in this case, § 365 mandates automatic forfeiture upon conviction, as a matter of law. In recognizing the mandate of § 365, the trial court had no discretion but to correct its erroneous oral judgment. Because forfeiture is automatic upon conviction, Tso was not prejudiced by the written order.
Prior to oral argument, we granted the Law and Order Committee (Committee) of the Navajo Nation Council leave to file an amicus curiae brief. The Committee states neither Tso nor the Nation addressed the removal provisions in 7 N.N.C. § 355(D). Asserting the trial court’s enforcement of 17 N.N.C. § 365 violates the separation of powers doctrine, the Committee asks this Court to invoke 17 N.N.C. § 365 while recognizing its authority and 7 N.N.C. § 355(D) as the final and proper removal procedure. Noting the distinction between removal and forfeiture, the Nation asserts there is no violation of the separation of powers doctrine because the Judicial Branch is not usurping any Legislative or Executive authority for it is simply implementing the clearly stated will of the Navajo Nation Council that a public official convicted of Abuse of Office shall permanently forfeit his or her office. We agree with the Nation. The trial court is not, in fact, removing Tso, for it is simply recognizing the mandatory effect of conviction by ordering forfeiture as contained in § 365. As mentioned above, forfeiture under 17 N.N.C. § 365 is automatic upon the conviction of Abuse of Office, irrespective of judicial declaration. We therefore affirm the sentence.
V
The conviction and sentence of the Shi-prock District Court are hereby AFFIRMED.

. Tso’s allegation is based on the existence of a Federal Bureau of Investigations report made available to him by the Nation through its open file disclosure. The report contains a statement by Williams that contradicts Benally’s testimony. Although Tso had the opportunity to admit the report as evidence or to call the FBI investigator who prepared the report, Tso took no such action.