*Emerson CHAPO*, et al.
Plaintiffs-Appellants
*vs.*
*THE NAVAJO NATION*, et al.
Defendants-Appellees

In the Supreme Court of the Navajo Nation

No. SC-CV-68-00

March 11, 2004

Elsie Redbird, Esq., Albuquerque, NM, for Plaintiffs-Appellants.

Luke A. Macik, Esq., Gallup, NM, Louis Denestosie, Esq., and Arita Yazzie, Esq., Window Rock, Navajo Nation, for Defendants-Appellees Navajo Nation and Wilson DeVore and William Platero in their official capacities.

Luke A. Macik, Esq., Gallup, NM, and F.D. Moeller, Esq., Farmington, NM for Defendant-Appellant Wilson DeVore in his individual capacity.

Lawrence Ruzow, Esq., Window Rock, Navajo Nation, and James E. Casados, Esq., Albuquerque, NM, for Defendants-Appellees Ramah Navajo School Board Inc., Ramah Navajo Social Services, Ramah Navajo Behavioral Health Services, Loretta Martinez, Judy Tyler, and Freddie Lee.

Before BATES ARTHUR, Chief Justice and BEDONIE, Associate Justice by designation.

Opinion delivered by BATES ARTHUR, Chief Justice.

The issue in this case concerns whether Appellees are immune from suit under the Navajo Sovereign Immunity Act, 1 N.N.C. §§ 551 *et seq.* We vacate the district court's Order in part and remand the case to the district court for further proceedings.

I

This case arises out of an order of detention of a minor by the Ramah District Court. The Ramah District Court adjudicated April Chapo a Child in Need of Supervision (CHINS) under the Navajo Children's Code. Defendant-Appellee William Platero is the juvenile presenting officer who filed the petition. Defendant-Appellee Wilson Devore is the juvenile probation officer assigned to Ms. Chapo. Defendant-Appellee Loretta Martinez is a social worker for Ramah Navajo Social Services, an entity of Ramah Navajo School Board, Inc., assigned to Ms. Chapo's case. Defendant-Appellee Judy Tyler is a psychologist for Ramah

Navajo Behavioral Health Services, an entity of Ramah Navajo School Board, Inc., assigned to Ms. Chapo. Defendant-Appellee Freddie Lee is a substance abuse counselor for Ramah Navajo Social Services assigned to Ms. Chapo.

All the above Defendants-Appellees participated in the CHINS proceeding by filing the petition, submitting reports or testifying before the court concerning Ms. Chapo. Based on the information provided by Appellees the Ramah District Court ordered that Ms. Chapo be sent to a juvenile detention center pending placement at a residential facility by Ramah Navajo Social Services. The court also ordered Ms. Chapo's father, Plaintiff-Appellant Emerson Chapo, to inpatient alcohol treatment, and ordered her mother, Plaintiff-Appellant Ruby Henio to attend counseling.

Plaintiff-Appellant Emerson Chapo, April's father, filed a petition for a writ of *habeas corpus* with this Court seeking his daughter's release. We granted the writ and ordered April's immediate release. *Chapo v. Benally*, No. SC-CV-0-00 (Nav. Sup. Ct. Jan. 7, 2000). Specifically, we ruled that the court should have appointed Ms. Chapo counsel and that the evidence submitted by Appellees DeVore, Lee and Martinez was not reliable. *Id.* at 1. We vacated all orders of the district court in the case.

Plaintiffs-Appellants (Appellants) then filed a civil complaint in the Ramah District Court. They sought money damages, including punitive damages, against the above officials, and also named the Navajo Nation, Ramah Navajo Social Services and Ramah Navajo Behavioral Health Services as defendants (collectively "Appellees"). The complaint alleged seven causes of action: (1) false arrest and imprisonment, (2) violation of due process of law, (3) denial of right to counsel, (4) denial of right to confront witnesses, (5) invasion of privacy, (6) malicious abuse of process, and (7) negligence. Only the negligence count applied to the Navajo Nation and the Ramah School Board entities.

Pursuant to the Navajo Sovereign Immunity Act, 1 N.N.C. § 555, Appellants sent a Notice of Desire to Institute Suit to the President and Attorney General prior to filing their complaint. The Notice named Appellees Martinez, Tyler, DeVore, Platero and the Ramah Navajo School Board, Inc. It did not name the Navajo Nation, Freddie Lee, Ramah Navajo Social Services or Ramah Navajo Behavioral Health Services.

The Ramah District Court transferred the case to the Window Rock District Court at the request of the Navajo Nation Department of Justice, pursuant to 1 N.N.C. § 555(D). Two sets of Appellees filed motions to dismiss the complaint. Appellees Navajo Nation, DeVore and Platero filed two motions under Rule 12(b)(l) of the Navajo Rules of Civil Procedure alleging lack of subject matter jurisdiction. One motion sought the dismissal of the Navajo Nation as a defendant because Appellants failed to name it as a potential defendant in their Notice of Desire to Institute Suit. The other sought dismissal under judicial immunity pursuant to the Navajo Sovereign Immunity Act, 1 N.N.C. § 554(F)(4)

(c). Appellees Martinez, Tyler, Lee, Ramah Navajo School Board, Ramah Navajo Social Services and Ramah Navajo Behavioral Health Services filed a separate motion to dismiss under 12(b)(l) alleging that they were also protected by judicial immunity but also alleged that the court lacked jurisdiction because Appellants' claims had to be filed against the United States in federal court under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.*

The Window Rock District Court dismissed all defendants in one order. The court ruled that failure to name the Navajo Nation in the Notice of Desire to Institute Suit violated the notice requirement in Section 555(A)(2) of the Sovereign Immunity Act. Order at 2. The court further ruled that Appellees' actions were protected by "absolute judicial immunity" because, according to the court, Appellees "were carrying out a court order of the Ramah District Court, whether or not the court order was valid or defective." *Id.* This appeal followed.

## II

The issues in this care are: (1) whether the district court erred when it dismissed all Appellees for Appellants' failure to name the Navajo Nation as a defendant in their Notice of Desire to Institute Suit under the Navajo Sovereign Immunity Act, and (2) whether the district court erred when it ruled that Appellees were immune from suit because they engaged in "Judicial action" as defined by the Navajo Sovereign Immunity Act.

## III

The first reason the district court gave for dismissing the case was that Appellants failed to name the Navajo Nation as a prospective defendant in their Notice of Desire to Institute Suit. Though unclear from its Order, it appears that the district court dismissed all Appellees for Appellants' alleged noncompliance in not naming the Navajo Nation. The notice requirements of the Navajo Sovereign Immunity Act, 1 N.N.C. §§ 551 *et seq.*, are jurisdictional, 1 N.N.C. § 555(A), and whether a plaintiff complied with them is a question of law. We review questions of law *de novo*, giving no deference to the district court's decision. *Dale Nicholson Trust v. Chavez*, 8 Nav. R. 417, 424 (Nav. Sup. Ct. 2004).

Before a district court may take jurisdiction over a suit against the Navajo Nation, a plaintiff must give notice to the Nation of his or her intended suit. 1 N.N.C. § 555(A). The President and Attorney General of the Navajo Nation must be given notice of the name of each prospective plaintiff; the identity of each prospective defendant [and] the nature of all claims and relief which will be sought. 1 N.N.C. § 555(A)(2) (emphasis added). Therefore, as a "jurisdictional condition precedent," 1 N.N.C. § 555(A), the plaintiff is required to name each defendant and the claim against that defendant.

In their Notice of Desire to Institute Suit Appellants did not name the Navajo Nation or make any claim directly against the Nation. However, in their Complaint they named the Navajo Nation as a defendant and alleged the Nation was liable for negligence. Complaint at ¶ 71. Specifically, they alleged that

the . . . governmental defendants owed the plaintiffs the duty to assure that officers and employees exercised their discretion in a manner which is consistent with the law and the civil rights of the plaintiffs, and they negligently failed to select, train, supervise or otherwise exercise oversight over the conduct of the individual human defendants in a negligent manner, causing the deprivation of the plaintiffs civil rights, to their damage and injury.

*Id.* The claim was made against the Navajo Nation itself for negligence for failure to train or oversee the individual defendants.

The question is under what circumstances must the Navajo Nation be specifically named as a potential defendant in a Notice of Desire to Institute Suit to successfully establish the district court's jurisdiction. The answer depends on the theory relied on by the plaintiff to sue the Navajo Nation. Under the Navajo Sovereign Immunity Act there are two potential forms of liability for the Navajo Nation: (1) direct, and (2) vicarious. Under direct liability, the Navajo Nation as an entity is liable for its own action or inaction. Under vicarious liability, the Navajo Nation is liable as an entity or employer for actions taken by officials or employees in their official capacity.

In claims made under direct liability, a potential plaintiff must name the Navajo Nation in its Notice of Desire to Institute Suit. If the plaintiff seeks compensation from the Navajo Nation for its own actions, the President and Attorney General must have notice of the potential claims so that they can properly prepare for litigation, or, where appropriate, under the Navajo Common Law principles of *k'é* and *nályééh*, seek to settle the claim amicably to promote harmony and restore balance in relationships between the parties. If the plaintiff chooses to move forward with litigation, failure to name the Navajo Nation in its Notice strips the district court of jurisdiction to hear any claims directly against the Nation.

On the other hand, if claims are based on vicarious liability, there is no requirement in the Sovereign Immunity Act that the Navajo Nation explicitly be named. The Act does not require that "the Navajo Nation" be named in every case, but requires that "each prospective defendant" be named. 1 N.N.C. § 555(A) (2). One purpose of the Act is for the Navajo Nation to assume, under certain circumstances, responsibility for the actions of its officials and employees. *See* 1 N.N.C. §§ 554(D), (E) (referring to "assumption of liability" of the Nation and "liability of a public entity or public officer, employee or agent assumed pursuant to [the] Act"). The Act provides a remedy against the Navajo Nation for the acts or inaction of its agents done in the scope of their authority or employment. In such cases then, the Notice of Desire to Institute Suit alerts Navajo Nation officials who prepare litigation defenses or authorize settlement of claims as to which officials or employees allegedly harmed the prospective plaintiffs and what they did or did not do that caused the plaintiffs' damages. Naming the officials or

employees of the Nation is enough to establish the court's jurisdiction, assuming the specific claims have also been included in the notice. We therefore hold that in cases where the Nation is sued as vicariously liable for the conduct of its officials or employees, the Nation itself does not need to be named.

Here, the district court appears to have dismissed the entire case because of the failure to name the Navajo Nation. Under the principles announced above, the court was justified only in dismissing the Navajo Nation itself.[1] It therefore erred when it dismissed all Appellees based on failure of the notice to name the Navajo Nation.

## IV

The district court used a second justification to dismiss the case by concluding that all Appellees were immune from suit under "absolute judicial immunity." The court cited a provision in the Navajo Sovereign Immunity Act, 1 N.N.C. § 554(F)(4)(c), that it believed cloaked Appellees with such immunity. Interpretation of this provision of the Act is a question of law which we review *de novo*.

## A

The Navajo Sovereign Immunity Act recognizes two types of suits against defendants who are officials or employees of the Navajo Nation: (1) official capacity suits, and (2) personal capacity suits. Official capacity suits are suits naming individual officials or employees, but in reality seeking compensation from the Navajo Nation. *See* 1 N.N.C. § 554(E) (referring to "liability of a public entity or public officer, employee or agent assumed" by the Nation). As stated above, the theory behind the Act is that the Navajo Nation as the government entity/employer is responsible for the actions of its officials or employees when the actions are taken in the scope of their authority or employment. *See id.* The Act explicitly denies any liability on the part of the Nation for "the actions or omissions of public officers, employees or agents which are determined to be contrary to or without authorization or otherwise outside or beyond the course and scope of such officer's, employee's or agent's authority." 1 N.N.C. § 554(E)(1).

A personal capacity suit seeks compensation from the individuals themselves, not from the Navajo Nation. For the individual to be liable, the Act requires that he or she acted "outside the scope of his or her employment and/or authority." 1 N.N.C. § 554(E)(2). As stated above, if the actions were within the scope of their authority or employment the Navajo Nation may ultimately be responsible to the plaintiff should the case be proven. Whether the suit is

[1] Appellants claim that they waived their negligence claims against the Navajo Nation in oral argument before the district court. There is no document in the record indicating that the court dismissed the Nation as a defendant based on such waiver. Assuming the Nation was still a party, as stated above, the court could only dismiss the Navajo Nation in its Order. On remand the court may clarify whether the Nation is dismissed from the suit.

properly an official capacity suit, for which the Navajo Nation is liable, or a personal capacity suit for which the individual defendant is liable, therefore depends on whether the actions of the defendants were taken in the scope of their authority or employment.

Whether the official or employee acted in their official or personal capacity also controls whether the defenses under the Act are available. The Act waives the Navajo Nation's immunity from certain types of suits, including civil rights claims.[2] 1 N.N.C. §554(F); *Navajo Nation v. Crockett*, 7 Nav. R. 237, 239 (Nav. Sup. Ct. 1996). The Act retains, however, the Navajo Nation's immunity, even in civil rights cases, for certain actions taken by officials or employees in their official capacity. These actions include discretionary decisions, 1 N.N.C. § 554(F)(4)(a), certain decisions made in good faith without gross negligence (qualified immunity), § 554(F)(4)(b), and, the specific defense at issue here, "Judicial action or inaction," § 554(F)(4)(c). The language and structure of the Act treat these defenses not as defenses of employees of the Nation to be used in personal capacity suits, but as protections of the sovereign immunity of the Navajo Nation in official capacity suits. *See* 1 N.N.C. § 554(E) (Nation's assumption of liability is "subject to any other immunity of that public entity or person.") Individual officials and employees acting outside the scope of their authority or

2 The court did not explicitly categorize the various claims of Appellants as "civil rights" claims. Appellants included several clear civil rights claims, including violations of due process, but also included several claims that could be categorized as intentional torts, including false arrest and imprisonment and malicious abuse of process. Appellees nowhere argue that the Navajo Nation did not waive its immunity from intentional torts in the Act, but rely on the "Judicial act" exception. Absent any facts in the record indicating that the insurance policies of the Nation do not cover these intentional torts, we assume the waiver in Section 5540 applies. The only question is then whether the "Judicial act" exception to that waiver still protects the Nation from suit.

employment therefore are not covered by these defenses.[3] *See McDonald v. Yazzie*, 6 Nav. R. 95, 96 (Nav. Sup. Ct. 1989). We must then decide whether the district court correctly applied these principles to the present case.

B

It is unclear from the Complaint whether Appellants intended to sue the named individual Appellees in their official or personal capacities. The caption of the Complaint names each Appellee as a defendant "individually and in [his or her] official capacity." The body of the Complaint states that each Appellee is sued in his or her "individual and official capacities." Complaint, ¶¶ 5-9, 12. However, elsewhere in the body of the Complaint Appellants allege that the actions of Appellees "[were] not within the scope of the authority of their office, employment or agency" for purposes of Section 554(F)(3). Complaint at ¶ 14. This section prohibits punitive damages against the Navajo Nation. The act of filing their Notice of Desire to Institute Suit suggests Appellants sought compensation from the Navajo Nation for Appellees' conduct, and therefore believed some actions were taken in the scope of their authority.

Though Appellants claim to sue the officials both in their official and personal capacities, as shown above, there cannot be liability under both theories for a single action. Either Appellees acted in their official capacity and the Nation may be liable, or individuals acted in their personal capacity and may be personally liable. The lower court needed to determine whether the suit is an official or personal capacity suit by determining whether Appellees' actions were in the scope of their authority or employment.

The court treated the case as a suit against the Navajo Nation itself when it

3 In this way civil rights suits under the Navajo Sovereign Immunity Act differ from civil rights suits against state officials under 42 U.S.C. § 1983 or federal officials under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). In a Section 1983 suit individuals acting under color of state law can be sued in their individual capacity even for actions taken in the scope of their authority. *Hafer v. Melo*, 502 U.S. 21, 28-29 (1991). The same holds true for federal officials under *Bivens. See Harlow v. Fitzgerald*, 457 U.S. 800, 817 n. 34 (1982). Individual officials or employees can assert immunity defenses such as absolute or qualified immunity and judicial and quasi-judicial immunity in personal capacity cases. *Hafer*, 502 U.S. at 28-29. Such defenses cannot be used by the state government in official capacity cases. *Id.* at 29. Here the Act applies such defenses to the immunity of the Navajo Nation, and does not recognize such defenses for officials and employees in personal capacity suits. The difference is justified because the Navajo Nation has explicitly waived its immunity from civil rights actions, *Navajo Nation v. Crockett*, 7 Nav. R. 237, 239 (Nav. Sup. Ct. 1996) while the United States has not, *Federal Deposit Ins. Cop. v. Meyer*, 510 U.S. 471, 478 (1991), and states are not liable for money damages in official capacity civil rights suits, *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Personal capacity suits therefore serve a different purpose in the Navajo Nation, as plaintiffs do not need to sue tribal officials or employees in their personal capacity to receive money damages, unless their actions were outside the scope of their authority or employment, making the Navajo Nation immune from such suit.

dismissed Appellees under the "Judicial action" immunity granted by Section 554(F)(4)(2). The court concluded that Appellees engaged in "Judicial action" because, according to the court, they "were carrying out a court order of the Ramah District Court, whether or not the court order was valid or defective." Order at 2. In dismissing the case on that ground, the court implicitly concluded that Appellees acted in the scope of their authority or employment. An implicit conclusion is not sufficient.

The court erred. In *McDonald, supra*, this Court required that the district court make findings concerning the capacity of the defendants before this Court could decide whether the defendants were protected by the sovereign immunity of the Navajo Nation. 6 Nav. R. at 96. This Court declined to make the conclusion itself, indicating it was not empowered to make the necessary findings of fact. *Id.* Under Sections 554(E)(1) and (2) of the Sovereign Immunity Act it must be "determined" or "established" that the actions of governmental officials were not in the scope of their employment or authority for the Navajo Nation to be free from any liability. *See also* 2 N.N.C. § 1964(I) (authorizing the Attorney General to represent an official sued in their personal capacity until "it is established" as a matter of law that the official's activities were not in the scope of his or her "duty or employment"). We read these provisions to require an explicit determination by the district court that the actions of the official or employee were or were not in the scope of his or her authority or employment before moving forward to consider immunity defenses.

We must remand this case to the district court for further fact finding and a determination of whether Appellees acted in the scope of their employment or authority. We decline to decide whether Appellees' actions fall under the "Judicial act" exception before the district court makes this explicit conclusion. We also decline to make that conclusion ourselves, as it may require facts not presently in the record.

We set the following guidelines to determine the capacity of the official. As indicated in *McDonald*, the district court must decide whether the official acted in the scope of authority or employment "after carefully reviewing documents, legal arguments, witness testimony, . . .Navajo cultural and traditional factors, and the public interest in having the dispute resolved." *Id.* at 96. We expand on *McDonald* by stating that whether an official acts within the scope of his or her authority or employment depends on the following factors: (1) the official's position, (2) the action the official took, (3) the official's authority and restrictions on that authority defined by applicable statute or regulation, (4) the official's responsibilities as defined in a job description or departmental policies and procedures, (5) any valid instructions to act or not act received from a supervisor or other superior official, and (6) responsibilities and restrictions on the authority of leaders under Navajo Common Law. If there are insufficient facts in the complaint or documents supplied with the motions to dismiss to weigh

these factors, the court can hold an evidentiary hearing on the issue of scope of authority or employment and make a ruling.

## V

On remand, there is a second threshold issue that the district court must consider: whether the employees and entities of the Ramah Navajo School Board, Inc. (RNSB) are covered by the immunity of the Navajo Nation under the Sovereign Immunity Act. Put another way, the court did not conclude explicitly that RNSB and its entities and employees are the "Navajo Nation" under the Act and therefore that the Nation is liable at all for their actions in this case. More importantly, if RNSB and its entities are not "the Navajo Nation" their employees are not covered by the "Judicial act" immunity recognized in the Act, whether or not their actions were within the scope of their authority or employment. Appellants argue that RNSB is not covered by the Sovereign Immunity Act. The RNSB Appellees make no argument concerning that issue, but assume they are protected by the judicial or qualified immunity of the Act.

Therefore, on remand the district court should also make factual findings on the status of Ramah Navajo School Board, Inc. and a legal conclusion concerning whether it comes within the definition of "the Navajo Nation" under the Act. The court should make the determination that RNSB is or is not covered by the Act before determining the capacity issue,[4] as the official or personal capacity distinction is only relevant for RNSB employees if RNSB is covered by the Act.[5]

## VI

The district court erred when it dismissed all Appellees for Appellants' failure to name the Navajo Nation in its Notice of Desire to Institute Suit. We therefore vacate that part of the court's Order. However, the district court correctly

4 An additional argument of the Ramah Appellees is that Pub. L. 101-512, § 314 (codified at 25 U.S.C. § 450f note) bars Appellant's claims. Specifically the Ramah Appellees argue that under that statute the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq., applies, and therefore the true defendant is the United States. Also, they argue that under the Federal Tort Claims Act the case must be heard in the Federal District Court for the District of New Mexico. As the district court did not reach that issue, we make no comment, as it may require additional fact finding. On remand, the district court in its discretion may consider that issue before considering the Sovereign Immunity Act issue or as an alternative reason to dismiss the Ramah Appellees if it finds they are not within the definition of "Navajo Nation" under the Act.

5 If RNSB is covered by the Sovereign Immunity Act, and therefore the Navajo Nation might be liable for the actions of it or its entities or employees, the district court must dismiss Ramah Navajo Social Services, Ramah Navajo Behavioral Services and Freddie Lee as defendants. As mentioned above, they were not named in the Notice of Desire to Institute Suit, and the Navajo Nation was not properly put on notice of its potential liability for their actions. Under 1 N.N.C. § 555(A)(2) the district court lacks jurisdiction over those defendants, and must dismiss them from the action. See pg. 5-7, supra.

dismissed the Navajo Nation. The district court erred when it did not make explicit findings and a legal conclusion on the threshold issue of whether the actions of Appellees were in the scope of their authority or employment. However, the district court must first make findings and a legal conclusion on the threshold issue of whether the entities and employees of the Ramah Navajo School Board, Inc. are "the Navajo Nation," and therefore protected by the Navajo Sovereign Immunity Act.

The order of the Window Rock District Court is VACATED in part and REMANDED for proceedings consistent with this opinion.