OPINION

This matter comes before the Court on Motion for Additional Clarifying Opinion filed on May 9,2014 in an action for writ of prohibition involving an internal conflict in the Navajo Nation Oil and Gas Company (NNOGC) between two parties both filing through different law firms under the corporate name. This Court issued a Perma *24 nent Writ of Prohibition to the Window Rock District Court on May 1, 2014, Petitioner now seeks a supplemental decision to clarify the basis for our Writ and to provide finality to the internal issues in the NNOGC.
In the writ action, petitioner is represented by the Frye Law Firm (Frye) and is captioned “NNOGC” while the real party in interest (RPI) is represented by the law firm of Johnson Bamhouse & Keegan LLP (Bamhouse) and captioned “Robert Joe,” however, In all his responses, Robert Joe refers to himself as “NNOGC.” Both sides in a court action cannot be the same entity. The writ is directed to the respondent Window Rock District Court. Four out of five shareholder representatives of NNOGC intervened in support of Robert Joe. Five members of the Board of Directors (directors) intervened in support of the petitioner. Amicus Louis Denetsosie, former NNOCG CEO and Attorney General of the Navajo Nation, was granted leave to file a brief. The Navajo Nation, through the Department of Justice, also intervened.
BACKGROUND
The internal conflict concerns the right of certain individuals in positions of authority within NNOGC to continue making decisions in those positions. Both sides claim that the other side lacks authority to pursue litigation in the corporate name due to suspension, firing or removal. The undisputed facts show that there was a meeting of shareholder representatives on December 21, 2013. After this meeting, Bamhouse informed the five directors that two had been removed and three suspended by vote of majority shareholder representatives. Specifically, four out of five shareholder representatives voted to suspend or remove, with Leonard Tsosie objecting.[1] On January 16, 2014, the Navajo Nation Department of Justice (NNDOJ), providing a legal memorandum on the suspensions and removals, raising concerns with the validity of the shareholder representatives’ action due to noncompliance with procedural requirements required to ensure due process and strongly encouraged that the shareholder representatives rescind their action and follow the steps set in the Bylaws of the Corporation.[2] On January 17, 2014, Robert Joe filed in the corporate name for an injunction in the Window Rock District Court, seeking to prevent the five directors from holding a scheduled January 21, 2014 Board meeting at which the removal of Robert Joe as CEO was on ■ the agenda, Robert Joe’s complaint stated that the five directors lacked authority to hold the meeting due to their suspension or removal, and that unless the meeting was prevented, further harm would result to NNOGC, at which the district court immediately issued an ex parte temporary injunction against the five directors. Robert Joe did not refer to the NNDOJ’s legal memorandum and did not set forth sovereign immunity as a jurisdictional basis in its statement of jurisdiction.
Petitioner, also filing in the corporate name, moved to dismiss the complaint on the basis that Barnhouse lacked due authority to file in the corporate name. The five directors filed third-party counterclaims against Robert Joe seeking declaratory and injunctive relief and damages. Subsequently, the NNDOJ brokered a *25 stipulation that was signed by all and entered by the court as a stipulated order. Various motions, including a dismissal motion by the directors and motion to intervene by the shareholder representatives, were then submitted, whereupon petitioner applied to this Court for a writ of prohibition claiming lack of subject matter jurisdiction under the Navajo Sovereign Immunity Act (NSIA). The shareholder representatives, the five directors, and the Navajo Nation through the NNDOJ filed responses to the petition. While the ex parte injunction was being challenged, the Board Meeting scheduled for January 21, 2014 proceeded, resulting in a Board resolution to remove Robert Joe as CEO.
Immediately following oral argument on May 1, 2014, this Court issued a succinct three-page Permanent Writ of Prohibition pursuant to our 7 N.N.C. § 303 authority to issue necessary and proper writs, invalidating all orders issuing from the district court on the basis of noncompliance with jurisdictional condition precedents required for immunities arising under the NSIA and further ordering dismissal of the underlying complaint filed by Robert Joe in the district court. In the Court’s decision, the parties were “encouraged to engage in further discussion to reach a resolution that preserves the public trust.” Permanent Writ of Prohibition, at 3 (Nav. Sup.Ct. May 1, 2014). Having found that the trial court lacked jurisdiction, we remained cognizant that there was a desperate need for a remedy, and that it be provided quickly. In our view, the individuals who make up the various corporate organs in this case are in positions of a naat’áanii as caretakers of assets of immense value to the Navajo People and, therefore, understand their duty of trust and responsibility to engage in reasonable collaborative settlement in the best interest of the corporation. This responsibility is not fully performed if the naat’áanii immediately resort to lawyers, who due simply to the nature of that adversarial profession, frequently find barriers to resolutions that require compromise.
On May 9, 2014, petitioner filed a motion for additional clarification, informing this Court that efforts of the five directors to convene meetings in their official capacity have been thwarted and they have not been allowed to function as directors pending a compromise. Petitioner asserts that the parties are confused as to their status in NNOGC due to unclear language in the writ, and additionally, that nothing is being done on the counterclaims. The parties are also confused on basic questions such as the effect of the writ of prohibition on the validity of the December 21, 2013 shareholder representatives’ vote to remove or suspend the five directors; who is NNOGC’s counsel; and whether Robert Joe is CEO following the Board’s January 21, 2014 meeting. Parties, intervenors, and amicus submitted responses that confirm the total breakdown in internal corporate communications. Untimely responses by parties were not accepted. A variety of other pleadings were also submitted seeking to strike pleadings of other parties, asking for reconsideration of untimely pleadings, or otherwise requesting relief beyond clarification of the jurisdictional issue. These are summarily denied.
This case is one more example the Court has seen of individuals in official positions enmeshed in conflict over authority and position rather than acknowledge that public officials are all trustees. The authority exercised in a public trust is not the right of any individual in an office of authority, but the right of the people. The parties presented multiple issues to this Court rather than deal with each other naat’ánii to nmi’ámi as we instructed in our permanent writ. This Court will re-frame the issues presented by the motion and re *26 sponses inasmuch as we are able to resolve them under our authority over original writ actions, and according to our duty to protect a valuable public asset. There is no doubt that the parties are in a quagmire, and a way must be found out of it, because of the valuable tribal assets that must be protected.
Having reviewed the motion and all timely responses, the Court accepts petitioner’s motion under N.R.C.A.P. 6 solely as a motion requesting clarification of the basis and effect of the writ. Additionally, because no two parties may claim the same identity before our courts, we are obliged to sort out the identities of the parties.
BASIS FOR WRIT OF PROHIBITION
The NNOGC is incorporated under Section 17 of the Indian Reorganization Act (“IRA”) by which a tribe may petition the Secretary of the Interior to issue a Federal Charter of Incorporation effective upon ratification by the tribe’s governing body.[3] NNOGC’s corporate Charter was ratified on February 5, 1998 by Resolution No. CF-22-98 of the Navajo Nation Council. Pet’r’s Br., Ex. B., April 16, 2014 (hereinafter Charter). A plain reading of NNOGC’s corporate Charter shows the Council’s clear intent that sovereign immunity under the NSIA fully protect the corporation and its directors as a Navajo Nation instrumentality, with any waiver of immunity “to sue or be sued,” or even to engage in mediation or settlement, possible only after fulfillment of specific conditions. Charter, Art, VIII(K) and XVI(A)(D). It is well-established that notice requirements at 1 N.N.C. § 555 are “jurisdictional condition precedents” for any claim for which immunity is waived under the NSIA. See Chapo v. Navajo Nation, 8 Nav. R. 447, 456, 5 Am. Tribal Law 384 (Nav.Sup.Ct.2004), cited and analyzed in Judy v. White, 8 Nav. R. 510, 532, 5 Am. Tribal Law 418 (Nav.Sup.Ct.2004) (pre-action notice requirements are jurisdictional). In Judy, we also stated that “[i]t is without question that our government cannot be sued except by its expressed consent. The Navajo Sovereign Immunity Act is the expression of that consent. It provides the means and manner by which suit will be brought against the sovereign ... limits suits against the sovereign to certain subject matters, [and] sets strict procedural preconditions to suit.... ” Judy, 8 Nav. R. at 532-533, 5 Am. Tribal Law 418. While Chapo addressed notice as set forth at 1 N.N.C. § 555(A), the notice conditions set forth in NNOGC’s Council-ratified Charter are equally jurisdictional in effect.
The Charter expressly provides that NNOGC “is an instrumentality of the Navajo Nation and is entitled to all of the privileges and immunities of the Navajo Nation ,.. including but not limited to the Navajo Sovereign Immunity Act at 1 N.N.C. § 551 et seq.” Charter, Art. XVI(A). The corporation has the power to waive immunity in order “[t)o sue or be sued in its corporate name to the extent provided in Article XVI of [the] Charter, and to that extent only.” Charter, Art. VIII(K). Thus, it cannot be more clear that the waiver conditions must be completely fulfilled. Pursuant to Article XVI(A), “[t]he Corporation and its directors, officers, employees and agents while acting in their official capacities are immune from suit.” Their immunities may be waived to sue and be sued and “to consent to alternative dispute resolution mechanisms ... or to suit” upon fulfillment of two conditions precedent: (a) upon express agreement by the Board of Directors prior to the time any alleged cause *27 of action accrues; and (b) “[a]ny waiver ... shall be in the form of a resolution duly adopted by the Board of Directors, upon thirty (30) days written notice to the Navajo Nation Council of the Board’s intent to adopt the resolution.” See Charter, Art. XVI(B); Art. XVI(A); Art. XVI(D). The wording that notice must be provided to the Council, rather than to the Navajo Nation owner/shareholder, makes it clear that this is a governmental notice requirement and, therefore, jurisdictional. The waiver conditions apply both to initiation of and submission to suits, as any suit, even initiated'by the NNOGC, opens up the instrumentality to counterclaims.[4]
In this case, the district court lacked subject matter jurisdiction over the underlying complaint for the following reasons. Firstly, due to the absence of a 30-day notice to the Council followed by a duly adopted Board resolution, authorizing suit by the Corporation, waiving the immunity of its directors, and consenting to any settlement talks brokered by the NNDOJ. Secondly, due to the lack of compliance with the notice requirements set forth in the NSIA itself at 1 N.N.C. § 555. For the above reasons, the filing of the complaint must be taken as an ultra vires act of Robert Joe and not by NNOGC in its corporate name.
Two issues were raised by the district court and Robert Joe: (a) that subject matter jurisdiction defenses were waived upon the signing of the stipulated order; and (b) that the directors having been suspended or removed were not protected by immunity.
Firstly, jurisdictional condition precedents under the NSIA are absolute in order for immunity waivers to be valid. See Judy, 8 Nav. R at 532, 5 Am. Tribal Law 418. The parties lacked authority to sign the stipulated order due to Robert Joe’s non-compliance with the 30-day Council notice followed by express agreement of the Board through a duly adopted resolution.
As we stated: “When jurisdiction has not yet been determined, a matter is not properly before a court; therefore the court lacks authority to sit in judgment over any incompletely or in portion of the matter ...” Begay v. Nav. Eng’g and Constr. Auth., 10 Am. Tribal Law 45, 48 (Nav.Sup.Ct.2011). Therefore, the stipulated order stating it “will retain jurisdiction over this matter,” and all prior orders of the district court, were invalid due to jurisdictional deficiencies. Order at ¶ 2(b), Resp’t Reap, to Writ of Prohibition, Ex. A, (W.R.DistCt. January 31, 2014).
As to the suspension or removal status of the five directors, we again look to the Charter and Bylaws of the Corporation. From these governing documents it is clear that “[ujnless a Board member is removed or resigns or otherwise vacates his or her position as a board member, such Board member shall serve as such, and be entitled to all of the rights ... of a Board member.” Charter, Art. Ill (as amended by Res. No. 194 of the Board of Directors on January 27, 2013); Bylaws, § 3.3, Pet’r’s Br., Ex. G. Therefore, the three directors who are merely suspended remain protected by their immunity rights. The court lacked subject matter jurisdic *28 tion over suits against the suspended directors due to jurisdietional notice deficiencies pursuant to 1 N.N.C, § 555,
The examination does not end there. The removal status of two directors as well as the suspension status of the above three directors are heavily contested in this case by Robert Joe and the shareholder representatives, with the NNDOJ having voiced its concerns over their validity on January 17, 2014 and also in its responses in this action. Whether or not the removal of the directors was valid goes directly to whether they were protected by sovereign immunity, since the Charter provides that immunity protection ends upon their removal. Bylaws, § 3.3. This Court is cognizant that the answer to this question would also dispose of the ultimate issue and previously striven to have the parties reach their own equitable compromise. However, we must now apply the law as the court of last resort, since the parties are unable to deal with each other equitably as we encouraged.
The five directors were suspended or removed by majority shareholder representatives’ vote[5] at a December 21, 2013 special meeting held in executive session to which the five directors were provided neither prior notice nor opportunity to respond. While Art. XI(M) of the Charter, read alone, appears to allow removal of a director “with cause at any time by a vote of the shareholder representatives,” we cautioned against the reading of provisions in isolation. “Our Navajo Nation laws must be read comprehensively and in combination, not piñón picked for provisions that support a given position.” NHA v. Johns, 11 Am. Tribal Law 31, 38 (Nav.Sup.Ct.2012) (citing In the Matter of Seanez, 9 Am. Tribal Law 377, 383-84 (Nav.Sup.Ct.2011)). The corporate Bylaws at Section 3.12 authorizes, the shareholder representatives’ vote provided that the shareholder representatives “shall comply with the “Standards and Procedures for the Removal of Members of the Board of Directors.” Approving Amendments to Article III, Sections 3.12 and, 3.16 of the Bylaws of NNOGC, NNOGC Bd. of Dirs. Res. No. 194, Bylaws, App. A, Pet’r’s Br., Ex. G, January 27, 2013. These standards and procedures do not permit the shareholder representatives and the CEO to act on suspension or removal without participation of the Board, and further require legal procedural formalities that were not followed in this case. The absence of due process formalities, including full Board involvement, notice, right of inspection of written reports, investigation of disputed facts by a neutral third party, the right of the accused to attend a meeting at which their removal or suspension is discussed, and right to provide a response prior to Board action is undisputed by either party.
As noted above, the NNDOJ raised concerns about the validity of the December 21, 2013 meeting in a legal memorandum dated January 16, 2014. In the response of the NNDOJ on behalf of the Navajo Nation, Attorney General Harrison Tsosie stated: “Even assuming that the [shareholder representatives] constituted a quorum, which they did not by the plain language of the Charter, they did not provide appropriate cause for the suspension or removal when taking their action, as also required by the Charter ... Simply put, their actions were not in accordance with the Charter, and are null and void.” NNDOJ Response to Motion for Clarification at 8, May 21, 2014, (citing Charter, Pet’r’s Br., Ex. A., Art. X(D) (quorum requirement); Art. XI(M) (cause requirement); Ex. S (letters of suspension and removal)). This Court is in agreement *29 with the Attorney General’s response.[6] In order to be valid, a director’s suspension or removal for cause must be accorded the due process protections set forth in the corporations own internal laws. In this case, those internal laws are also the law of the Navajo Nation due to Council ratification. For purposes of our jurisdictional analysis, we find that the five directors were not legally suspended or removed, and all directors were therefore protected by sovereign immunity at all times relevant to the injunction action. As such, they were entitled to notice under 1 N.N.C. § 555, the non-provision of which is a fatal jurisdictional defect. The NNDOJ’s January 16, 2014 memorandum should have forestalled any injunctive order. Instead, it was ignored.
Both the NSIA and the Charter provide for conditional immunity for corporate individuals who are acting in their “official capacities.” Pursuant to Chapo, official capacity immunity depends on whether actions were taken “in the scope of their authority.” 8 Nav. R. at 458, 5 Am. Tribal Law 384. Whether an official acts within the scope of his or her authority or employment depends on factors we set forth in Chapo including whether actions were taken beyond “the official’s authority and restrictions on that authority defined by applicable statute or regulation” which, essentially, defines ultra vires. Id. at 461-462, 5 Am. Tribal Law 384. Immunity may well be stripped from an individual if willful or grossly negligent ultra vires acts are found. However, for purposes of the jurisdictional notice conditions precedent, notice must absolutely be given to all board members of Navajo Nation enterprises being sued. Any court determination as to whether actions are ultra vires must come after an action is duly commenced and prior to issuance of any court order. The district court had ample warning in the underlying complaint itself that the directors continued to believe they were active status directors and were performing official duties via scheduling a Board meeting on January 21, 2014. However, it is clear that the district court received no warning from the complaint that sovereign immunity was involved in the matter before it.
Sovereign immunity is jurisdictional, and a defense of sovereign immunity automatically raises questions concerning the district court’s jurisdiction over the Navajo Nation and/or covered officials who are sued in their official capacity. See Johnson v. Navajo Nation, 5 Nav. R. 192 (Nav.Sup.Ct.1987). For this reason, our court procedural rules mandate that a complaint set forth the court’s jurisdiction. Nav. R. Civ. P. 8(a)(1), The jurisdictional statement must be complete and accurate so that the court is fully informed as to its ability to act in the matter. It must be noted that in spite of the clarity of the Charter’s immunity waiver article, Robert Joe’s complaint in the district court did not cite sovereign immunity as a possible jurisdictional limitation. Additionally, Robert Joe referred to NNOGC as a “private federally chartered corporation” and “not a government or government subdivision,” while neglecting to mention that the NNOGC is a “Navajo Nation instrumentality” by Charter, see Verified Complaint at ¶¶ 8-9, Pet’r’s Add. to Br. at 1, April 15, 2014, that must “return all dividends and distributions of profit to the Navajo Nation *30 government to be devoted to essential governmental functions!,]” see Charter, Art. VII(E). The result is a facially deficient and misleading underlying complaint.
The following foundational principles bear on our jurisdictional analysis above and must be well understood by our courts and all Navajo Nation corporations.
Firstly, express Council enactments such as the NNOGC’s corporate Charter are mandatory. The articles in the Charter are neither optional nor facilitative, but are legal formalities that must be followed to the letter in order for actions or decisions to be valid. The same is true for corporation bylaws that are duly adopted according to the letter of the Charter which collectively are designed to protect all stakeholders. We applied this principle in the issuance of our Writ of Prohibition.
Secondly, NNOGC’s bylaws state that they are “in conformity with general corporation law, a proper interpretation of the Navajo Corporation Code, and the best interest of the Corporation.” Bylaws, § 3.3, n.l. The Navajo Corporation Act is, in turn, “based upon the American Bar Association’s Model Business Corporation Act.” 5 N.N.C. § 3100(B). The Navajo Nation chose NNOGC to operate within the establishment of American corporations, beholden to the same general corporate principles, and its corporate organs must therefore be obedient to the spirit and letter of those principles. No general principle of corporate law would allow a governing Board to be so diminished below quorum so that an officer/CEO becomes the sole decision-maker without any Board oversight for his or her transactions. Had all parties faithfully observed the Charter and Bylaws, intended as complete documents providing for procedures for internal resolution for every business-related eventuality, this matter should never have needed the equitable remedy of injunctive relief through our courts. The courts are not a forum for validating noncompliance with legal constraints calculated to protect all stakeholders, nor are they to be resorted to by individuals to forestall internal inquiries into their performance or actions by other corporate organs. Where corporate matters are governed by statutes, corporate charters, and bylaws, our courts shall apply their mandatory language.
In their response, shareholder representatives ask that this Court reconsider and find that neither NNOGC nor its directors are cloaked in immunity. Resp. of S’holder Rep’s, to Movant’s Req. for Clarification at 10-13, May 21, 2014. As support, they assert that NNOGC is federally-chartered with the Secretary of the Interior empowered to ratify its Charter and control its contents, therefore NNOGC is not a tribal business and neither it nor its directors share in tribal sovereign immunity. Robert Joe, through Bamhouse, also asserted at oral argument that NNGOC is “no different from a McDonald’s or Circle K.” Audio recording of Oral Argument, May 1, 2014. However, since the corporate Charter itself expressly places NNOGC and its directors under the protection of the NSIA, Robert Joe and shareholder representatives’ arguments are perplexing in their avoidance of clear laws enacted by the Navajo Nation Council. Additionally, it should have been known to their legal counsel that under federal law, IRA § 17 corporations may invoke sovereign immunity[7] if that is the tribe’s intent and the *31 tribe has sufficient control over the entity.[8] Control of the tribe is unquestioned, as the Navajo Nation is the sole shareholder of NNOGC, participating through shareholder representatives drawn from standing committees of the Navajo Nation Council, and its Board of Directors nominated by the Agency Councils and President with final selection by a Council standing committee. Charter, Art. V(B), V(D), and XI (C) respectively. The extent of control by the tribe confers jurisdiction on our Courts over all internal conflicts of NNOGC where NSIA conditions or exceptions are met.
This brings us to a third foundational principle, which is corporate independence. Businesses—even Navajo enterprises or instrumentalities covered by governmental protections—must be able to conduct their business transactions and internal affairs free of influence or pressure by the government. A corporation, under established fiduciary principles, must be run autonomously as a business. If politicians participate in a business, it cannot be in their governmental capacities. This is true for NNOGC. See Charter, Art. § X(C) (providing that “shareholder representatives shall sit in their capacity as representatives of the sole shareholder and not as members of the Navajo Nation Council.”).[9] The Navajo Nation is sole shareholder of NNOGC “for the benefit of the Nation and its enrolled members.” Charter, Art. V(B), and as stated above, 100% of NNOGC revenues go toward governmental services for the people. Navajos think in communal ownership. Its shareholder representatives are, essentially, trustees of a public trust asset for the Navajo people and must exercise their fiduciary responsibility.
Shareholder representatives inform this Court that the Council recently approved an amended Charter and directed the Navajo Nation Washington Office to take all actions necessary to petition the Secretary of the Interior (Secretary) to issue the restated Charter. Four of Five S’holder Rep’s. Br. at 6-7, April 25, 2014; and see also Ex. B, April 25, 2014. (Leg. No. 0352, passed April 22, 2014). The amendments create new qualifications for Board members that the present directors may not possess, and would strip the Agency Councils and President from being able to select Board directors, which is authorized under the present Charter. Shareholder representatives ask the Court to consider the suspended and removed directors disqualified pursuant to the amended Charter. However, approval of the amendments by the Council is not enough to render the amendments “operative.” Under 25 U.S.C. § 477, the amendments must now be submitted by petition to the Secretary for approval, following which the Charter becomes “operative” upon further ratification by the Navajo Nation Council, Additionally, it is far from clear that the Secretary’s approval will be obtained. We take judicial notice that the President of the Navajo Nation raised deep concerns about the amendments, which would concentrate *32 control and influence of this multi-million dollar asset entirely in the Council, a single branch of government.[10] Currently, shareholder representatives of the Navajo Nation as sole shareholder, on behalf of the true owners the Navajo people, are already drawn solely from the Council. We would note, again, that all dividends and profits of NNOGC go to fund “essential governmental functions,” not just the functions of the Council. Charter, Art. VII(E). As with any governmental venture held in the public trust, a Section 17 corporation Charter is only as good as its checks and balances safeguarding all stakeholders. The proposed amendments affect the independence of the branches as well as the corporate organs.
The foregoing discussion sufficiently clarifies the basis of our Writ of Prohibition.
It is clear from this case that internal conflicts of Navajo Nation instrumentalities and enterprises, especially those whose operations deeply impact the public welfare through governmental services, need expedited remedies. Authority to provide writ relief is provided generally at 7 N.N.C. §§ 255 and 303. The writ of quo warranto[11] is a type of prospective mandamus used in most, if not all state jurisdictions.[12] On the Navajo Nation, such a writ action may be brought by the government or a private person, either de jure or de facto, to compel an individual to show “by what warrant”[13] he or she presumes to hold office where the individual usurps, intrudes into, or unlawfully holds office in a public body or corporate entity.
We note, finally, that exceptions to NSIA conditions exist in regard to the Navajo Nation government. An injunction, declaratory judgment and prospective mandamus are exceptions to the NSIA to compel “[a]ny officer, employee or agent of the Navajo Nation” to perform law-mandated responsibilities. See 1 N.N.C. § 554(G). Additionally, a common-law exception to the NSIA jurisdictional advance notice requirement presently exists for internal governmental conflicts within the branches. See Shirley v. Morgan, No. SC-SC-02-10, slip op. at 5-8 (Nav. Sup.Ct. June 2, 2010) (stating that “Government entities must have access to our courts without undue restraint and on such terms and conditions as may be available to any individual person seeking relief for private disputes through our courts.”). However, although we would have entertained a request, none of the parties asked this Court to apply the above NSIA exceptions to internal conflicts of Navajo Nation instru-mentalities.
EFFECT OF WHIT OF PROHIBITION
To forestall further chaos between the parties, we are compelled to spell out the *33 legal effect of this Writ of Prohibition, including the effect of our jurisdictional findings, as follows:
1. We addressed the status of suspension or removal of the five directors in order to ascertain whether or not the five directors were protected by sovereign immunity. We found the five directors were not validly suspended or removed on December 21, 2013. The five directors continue to actively serve without interruption prior to and following December 21, 2013.
2. The Writ of Prohibition renders invalid ah initio all orders of the district court, including the January 17, 2014 temporary restraining order (TRO) and the January 31, 2014 Stipulated Order.
 3. The Writ dismisses the underlying complaint, but not the counterclaims. “If the court lacks jurisdiction over the original petition, the counterclaim nonetheless survives if there is a separate jurisdictional basis to hear the counterclaim.” Begay v. Begay, 6 Am. Tribal Law 748, 749 (Nav.Sup.Ct.2006). And see, e.g., Begay v. Nav. Eng’g and Constr. Auth, 10 Am. Tribal Law at 46-47, fn. 1 (counterclaim may survive involuntary dismissal of claim). We found that Robert Joe acted beyond the scope of his authority in filing the complaint. As a result, the plaintiff was Robert Joe in his individual capacity. Since a counterclaim may only be filed against a claiming party, counterclaims filed by the five directors against Robert Joe in his individual capacity for declaratory judgment, injunction, and damages survive. Regardless, counterclaims are permitted without NSIA advance notice formalities of any kind. See Navajo Nation v. RJN Constr., et al, 10 Am. Tribal Law at 274-75 cited at fn. 4, supra. Additionally, the Charter and Bylaws require specific Council notice for suits and submission to suits, but not for defenses and counterclaims that must be raised in an answer. The district court has an obligation to address the counterclaims as speedily as possible. The district court needs to make sure that the counterclaims are still on its docket, following which the district court should consider and enter judgment on the counterclaims without delay. Amendment of any counterclaims for jurisdictional purposes should be allowed on the basis of our above finding.

. Shareholder representative and Council Delegate Leonard Tsosie consistently objected "to the improper manner of calling and conducting the meeting." Declaration of Leonard Tsosie at ¶ 5, Pet’r’s Br„ Ex. R.

, This memorandum was filed under seal.

. See 25 U.S.G. § 477

. See Navajo Nation v. RJN Constr., et al, 10 Am. Tribal Law at 274-75 (Nav.Sup.Ct.2012) (permitting counterclaim against the Navajo Nation without advance notice formalities,); and see, e.g., Ruppenthal v. State, 849 P.2d 1316 (Wy.Sup.Ct.1993) (providing that a claim otherwise barred by sovereign immunity may be asserted as counterclaim in government-initiated lawsuit if it arises out of same transaction or occurrence that is subject matter of the state’s claim).

, See fn, 1, supra.

. See 2 N.N.C. § 1965 (providing that when the opinion of the Attorney General requested by any entity of the Navajo Nation concerning any question of law relating to their respective entity or offices, "n]o adverse action may be taken .,. against any official or employee of the Navajo Nation government for conduct taken in reasonable reliance upon the advice given in such an opinion,”

. See Amerind Risk Management Corporation v. Malaterre (8 Cir. Ct.App. Feb. 15, 2011); cert. den., January 17, 2012.

. Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort, 629 F.3d 1173, 1180 (10th Cir.2010)

. It was foreseen years ago that the involvement of elected officials in boards or commissions of contracting organizations with the Navajo Nation or on the board of directors of Navajo Nation enterprises may result in impermissible conflicts of interest. See Opinion of the Attorney General of the Navajo Nation, No, AG-08-94 (May 20, 1994), The functional distinction between the roles of shareholder representatives, who are not managers, and directors who have exclusive high-level managerial authority, is not just for show under our Ethics in Government Laws. Had the roles not been blurred, the problems in this case would have been forestalled.

. We take judicial notice that on May 23, 2014, President Ben Shelly issued a press release stating his intent to lodge an objection with the Secretary against approving the amendments, which he termed a “usurpation of power” by the Council that would result in only one branch of government exclusively involved in the running of a tribal asset worth in the hundreds of millions.

. While injunctions serve to prevent acts, and declaratory judgments simply clarify the relationship of parties and their rights in a matter while' not providing for any enforcement, the quo warranto writ is an expedited self-enforcing writ directed to the person whose continued legitimate occupancy of an office or position in a public body or corporation is questioned. Such writs may be filed to the district courts pursuant to 7 N.N.C, § 255, and also to this Court pursuant to 7 N.N.C. § 302 and 303.

. Quo warranto exists as both a statutory and common law writ option in all state jurisdictions. See, e.g., California Code of Civil Procedure, Sections 803-811; and see Minn. Stat. Ann. § 480.04 (West).

. See 51 A.L.R.2d 1306.